483 A.2d 759

**STATE of Maryland**

v.

**Melvin FAULKNER.**

**No. 47, Sept. Term, 1983.**

Court of Appeals of Maryland.

Nov. 21, 1984.

Valerie V. Cloutier, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, on brief), for appellant.

Gary S. Offutt, Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on brief), for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON,* RODOWSKY and COUCH, JJ.

COLE, Judge.

The twin issues we shall decide in this case are whether Maryland recognizes the mitigation defense of "imperfect self defense" and, if so, whether that defense applies to the statutory offense of assault with intent to murder under Maryland Code (1957, 1982 Repl.Vol.), Art. 27, § 12.

We set forth a shortened version of the facts that give rise to these issues. On September 15, 1981, the Emanuel brothers, Jimmy and Rickey, became embroiled in an argument with Melvin J. Faulkner, Jr. outside of a Baltimore City bar. This argument quickly escalated into a fight between Jimmy and Faulkner. Because Faulkner believed that Jimmy was armed with a knife, Faulkner produced a handgun and began firing. Faulkner, however, shot Rickey twice in the chest as Rickey tried to push his brother from the handgun's line of fire. The testimony reflects considerable conflict as to what led Faulkner to believe that Jimmy was armed with a knife, which participant was the aggressor at various stages of this imbroglio, who entered into the melee mutually and willfully, and who was simply acting in self defense.

---

* Davidson, J., participated in the hearing and in the conference of the case in regard to its decision, but died prior to the adoption of the opinion by the Court.

Faulkner was charged with assault with intent to murder and related offenses. At his trial in the Criminal Court of Baltimore (now Circuit Court for Baltimore City), the court instructed the jury as to the defenses of justification by way of self defense and mitigation by way of hot-blooded response to the provocation of mutual combat. The court, however, declined Faulkner's request that the jury also be instructed as to the defense of "imperfect self defense." The jury subsequently found Faulkner guilty of assault with intent to murder and related handgun offenses. In a divided decision, the Court of Special Appeals reversed, holding that the trial court erred in refusing to instruct the jury as to the defense of imperfect self defense. *Faulkner v. State*, 54 Md.App. 113, 458 A.2d 81 (1983). We granted the State's petition for a writ of certiorari to address the important issues presented.

## I

Initially, we note that the difference between murder and manslaughter is the presence or absence of malice. *State v. Ward*, 284 Md. 189, 195, 396 A.2d 1041 (1978); *Davis v. State*, 39 Md. 355 (1874); *Weighorst v. State*, 7 Md. 442 (1855). Self defense operates as a complete defense to either murder or manslaughter. A successful self defense, therefore, results in the acquittal of the defendant. We have summarized the elements necessary to justify a homicide, other than felony murder, on the basis of self defense in the following terms:

(1) The accused must have had reasonable grounds to believe himself in apparent imminent or immediate danger of death or serious bodily harm from his assailant or potential assailant;

(2) The accused must have in fact believed himself in this danger;

(3) The accused claiming the right of self defense must not have been the aggressor or provoked the conflict; and

(4) The force used must have not been unreasonable and excessive, that is, the force must not have been more force than the exigency demanded.

*See Tichnell v. State,* 287 Md. 695, 718, 415 A.2d 830 (1980) (*Tichnell I*) (quoting *Guerriero v. State,* 213 Md. 545, 549, 132 A.2d 466 (1957)); *DeVaughn v. State,* 232 Md. 447, 453, 194 A.2d 109 (1963), *cert. denied,* 376 U.S. 927, 84 S.Ct. 693, 11 L.Ed.2d 623 (1964); *Bruce v. State,* 218 Md. 87, 96–97, 145 A.2d 428 (1958) (discussing elements of self defense in a review of jury instructions given on the subject).

Imperfect self defense, by contrast, is not a complete defense. Its chief characteristic is that it operates to negate malice, an element the State must prove to establish murder. As a result, the successful invocation of this doctrine does not completely exonerate the defendant, but mitigates murder to voluntary manslaughter.

There are other types of defenses that mitigate murder to manslaughter but do not fall under the umbrella of imperfect self defense. Commonly regarded as falling within this group are killings stemming from a heat of passion, such as (1) discovering a spouse in the act of sexual intercourse with another; (2) mutual combat; and (3) assault and battery. *See Tripp v. State,* 36 Md.App. 459, 374 A.2d 384 (1977); *Bartram v. State,* 33 Md.App. 115, 364 A.2d 1119 (1976); *Whitehead v. State,* 9 Md.App. 7, 262 A.2d 316 (1970). These acts, because they create passion in the defendant and are not the product of a free will, negate malice and thus mitigate a homicide to manslaughter.

Imperfect self defense, however, is different from either self defense or the commonly recognized mitigation defenses. Because the doctrine of imperfect self defense has been subjected to different interpretations and regarded by some courts and scholars as being a recent theory not far advanced, we believe a brief examination of its history and development will help clarify its nature and scope and point out the differences.

The rudimentary principles of imperfect self defense appeared in a series of manslaughter statutes enacted in England between 1496 and 1547. *See* R. Moreland, *The Law of Homicide* 91 (1952). According to Professor Moreland, these statutes reflected a compromise between murder and complete exoneration in those instances where a defendant's conduct warranted neither a murder conviction nor an acquittal. Out of these statutes arose the mitigating defense of imperfect self defense, which was predicated upon a "fear of life." Imperfect self defense was applicable to a crime *without* passion so as to distinguish it from the mitigation defense founded upon heat of passion. However, because the defendant was at fault the law demanded that he bear some criminal responsibility for the homicide although he lacked the requisite *mens rea* for murder. Professor Moreland put it this way:

> In each case [homicide arising from provocation (crime of passion) and one arising from a "fear of life" (crime without passion)] the accused might well be held for murder or he might be excused because of the circumstances for committing the crime; but the law compromises, takes a middle ground, and holds him guilty of manslaughter. Thus, in the case of imperfect self defense, the law might refuse him the opportunity to plead self-defense because of his fault and hold him guilty of murder, or it might waive his fault and allow him to utilize the excuse of self-defense. Balancing the two, the law strikes a middle ground as a matter of policy and rather reasonably convicts him of voluntary manslaughter.

*Id.* at 92.

In concert with the above, Professor Perkins recognized that manslaughter is a "catch-all" concept that encompasses a variety of homicides that are "neither murder nor innocent." R. Perkins, *Criminal Law* 69 (2d ed. 1969). In elaborating upon this proposition, Professor Perkins explained:

> Since manslaughter is a "catch-all" concept, covering all homicides which are neither murder nor innocent, it

logically includes some killings involving other types of mitigation, and such is the rule of the common law. For example, if one man kills another intentionally, under circumstances beyond the scope of innocent homicide, the facts may come so close to justification or excuse that the killing will be classed as voluntary manslaughter rather than murder. "It is not always necessary to show that the killing was done in the heat of passion, to reduce the crime to manslaughter;" said the Arkansas court, "for, where the killing was done because the slayer believes that he is in great danger, but the facts do not warrant such a belief, it may be murder or manslaughter according to the circumstances, even though there be no passion." To give another illustration, the intentional taking of human life to prevent crime may fall a little short of complete justification or excuse and still be without malice aforethought.

*Id.* at 69–70 (footnotes omitted).

The doctrine of imperfect self defense gained a foothold in the United States in the late 1800's. The "cornerstone" case for this defense is an 1882 decision by the Court of Criminal Appeals of Texas. *Reed v. State*, 11 Tex.Crim. App. 509 (1882). In discussing the doctrine the *Reed* court remarked:

It [self defense] may be divided into two general classes, to wit, perfect and imperfect right of self defense.... If, however, [the defendant] was in the wrong,—if he was himself violating or in the act of violating the law,—and on account of his own wrong was placed in a situation wherein it became necessary for him to defend himself against an attack made upon himself which was superinduced or created by his own wrong, then the law justly limits his right of self defense, and regulates it according to the magnitude of his own wrong. Such a state of case may be said to illustrate and determine what in law would be denominated the imperfect right of self-defense. Whenever a party by his own wrongful act produces a condition of things wherein it becomes necessary for his

own safety that he should take life or do serious bodily harm, then indeed the law wisely imputes to him his own wrong and its consequences to the extent that they may and should be considered in determining the grade of offense which but for such acts would never have been occasioned.

*Id.* at 517–18. Shortly after *Reed,* courts fashioned three variations of the doctrine.

First, some courts indicated that the doctrine would apply where the homicide would fall within the perfect self defense doctrine but for the fault of the defendant in provoking or initiating the difficulty at the non-deadly force level. *E.g., Allison v. State,* 74 Ark. 444, 86 S.W. 409 (1905) (dictum); *Reed v. State, supra; State v. Flory,* 40 Wyo. 184, 276 P. 458 (1929) (dictum). Second, courts noted that the doctrine would apply when the defendant committed a homicide because of a honest but unreasonable belief that he was about to suffer death or serious bodily harm. *E.g., Allison v. State, supra* (dictum); *State v. Thomas,* 184 N.C. 757, 114 S.E. 834 (1922). Third, other courts recognized the doctrine when the defendant used unreasonable force in defending himself and, as a result, killed his opponent. *See, e.g., State v. Clark,* 69 Kan. 576, 77 P. 287 (1904).

Since the acceptance of this doctrine by several jurisdictions during the late 1800's and early 1900's, comparatively few modern jurisdictions have analyzed the doctrine. Of those jurisdictions that have considered the doctrine in recent times, however, several have adopted the honest but unreasonable belief variation of the imperfect self defense doctrine. For example, in providing a comprehensive discussion of the honest but unreasonable belief standard, the Supreme Court of California in *People v. Flannel,* 25 Cal.3d 668, 603 P.2d 1, 160 Cal.Rptr. 84 (1979), sought to eliminate the "obfuscat[ion] by infrequent reference and inadequate elucidation" of what it characterized as a unique rule. *Id.* 25 Cal.3d at 681, 603 P.2d at 8, 160 Cal.Rptr. at 91. Consistent with Professor Moreland's view, the *Flannel* court observed that the unreasonable belief theory of imperfect

self defense is not limited by or bound up with the concept of the mitigating defense of heat of passion.

In addition, the court explained that the reasonableness of an individual's honest belief that he needs to repel imminent peril or bodily injury simply goes to the justification for the homicide. Moreover, the *Flannel* court emphasized the weighing of competing interests in determining the applicability of this mitigation defense. In writing for the court, Justice Tobriner observed:

> [T]he state has no legitimate interest in obtaining a conviction of murder when, by virtue of defendant's unreasonable belief, the jury entertains a reasonable doubt whether defendant harbored malice. Likewise, a defendant has no legitimate interest in complete exculpation when acting outside the range of reasonable behavior. The vice is the element of malice; in its absence the level of guilt must decline.

*Id.* 25 Cal.3d at 680, 603 P.2d at 7, 160 Cal.Rptr. at 90 (citations omitted). This reasoning is persuasive because it recognizes that a defendant's culpability for a homicide be mitigated when he lacks the requisite mens rea for the offense of murder. Jurisdictions in addition to California have likewise recognized the honest but unreasonable belief standard on the basis of decisional law. *Hartfield v. State*, 176 Miss. 776, 170 So. 531 (1936); *Wood v. State*, 486 P.2d 750 (Okla.Crim.App.1971).

Unlike California and several other jurisdictions, some states apparently do not recognize the honest but unreasonable belief standard of imperfect self defense. For instance, in a 1944 decision, the Supreme Court of Missouri suggested in dictum that a person may avail himself of the doctrine of imperfect self defense when he is the initial aggressor or when he voluntarily enters a difficulty without a felonious intent and is forced to commit a homicide to save his life. *State v. Ferguson*, 353 Mo. 46, 182 S.W.2d 38 (1944); *see State v. Mayberry*, 360 Mo. 35, 226 S.W.2d 725 (1950) (defendant entitled to voluntary manslaughter instruction when evidence shows that he lacked malice in

committing the homicide); *State v. Phroper,* 619 S.W.2d 83 (Mo.Ct.App.1981) (dictum) (aggressor may use imperfect self defense provided he enters an encounter without felonious intent).

North Carolina has carefully articulated a formula-based standard for determining whether a defendant charged with murder is entitled to an instruction on the doctrine of imperfect self defense. This standard, unique in its clarity, uses the elements of perfect self defense as its benchmark. Under this approach, perfect self defense excuses a homicide when it is shown that, at the time of the homicide, the:

(1) Defendant subjectively believed it necessary to kill the deceased to save himself from death or great bodily harm;

(2) Defendant's belief was objectively reasonable;

(3) Defendant was not the aggressor in bringing on the affray, *i.e.,* he did not aggressively and willingly enter into the fight without legal excuse or provocation; and

(4) Defendant did not use excessive force.

Imperfect self defense, by contrast, arises when only elements (1) and (2) above are present. *State v. Bush,* 307 N.C. 152, 297 S.E.2d 563, 568 (1982). The *Bush* court elaborated upon its standard in the following terms:

[I]f the defendant believed it was necessary to kill the deceased in order to save himself from death or great bodily harm, and the defendant's belief was reasonable because the circumstances at the time were sufficient to create such a belief in the mind of a person of ordinary firmness, but the defendant, although without murderous intent, was the aggressor or used excessive force, the defendant would have lost the benefit of perfect self defense. In this situation he would have shown only that he exercised the imperfect right of self-defense and would remain guilty of at least voluntary manslaughter. However, both elements (1) and (2) [above] must be shown to exist before the defendant will be entitled to the benefit of either perfect or imperfect self defense.

*Id.* (citation omitted); *State v. Marlow,* 310 N.C. 507, 313 S.E.2d 532 (1984); *State v. Wallace,* 309 N.C. 141, 305 S.E.2d 548 (1983). *See generally* Casenote, *Criminal Law—Perfecting the Imperfect Right of Self Defense— State v. Norris,* 303 N.C. 526, 279 S.E.2d 570 (1981), 4 Campbell L.Rev. 427 (1982) (discussing North Carolina's version of imperfect self defense). This particular formulation, which evidently has not been adopted by other jurisdictions, does not embrace the honest but unreasonable belief standard because a defendant must both objectively and subjectively believe that he must resort to deadly force to prevent death or serious bodily harm. Only if the defendant satisfies these two criteria may he invoke the imperfect self defense doctrine if he was the initial aggressor or used excessive force in defending himself. In sum, although several jurisdictions have adopted the doctrine by means of case law, they are not in agreement as to the standard that should be applied.[1]

Many states that recognize the doctrine on the basis of statutory law have adopted the subjectively honest but objectively unreasonable standard of the imperfect self defense doctrine. Ill.Ann.Stat. ch. 38, § 9–2 (Smith-Hurd Supp.1984–1985); 18 Pa.Cons.Stat.Ann. § 2503(b) (Purdon 1983); Tex.Penal Code Ann. § 9.32 (Vernon Supp.1984); Wis.Stat.Ann. § 940.05(2) (West 1982). For example, Pennsylvania, which has "long recognized" this mitigation defense, *Commonwealth v. Cain,* 484 Pa. 240, 398 A.2d 1359, 1361 (1979); *see Commonwealth v. Nau,* 473 Pa. 1, 373 A.2d 449, 452 n. 5 (1977) (citing cases), has a statute governing voluntary manslaughter that embodies the doc-

---

**1.** Although four other jurisdictions (Arkansas, Kansas, North Dakota, and Tennessee) recognized the doctrine in early decisions, they have not recently addressed the matter. *E.g., Allison v. State, supra; State v. Clark, supra; State v. Swift,* 53 N.D. 916, 208 N.W. 388 (1926); *State v. Foutch,* 95 Tenn. 711, 34 S.W. 423 (1896). We note parenthetically that the Supreme Court of North Dakota recently raised but did not decide whether its statute on excuse embodied the imperfect self defense doctrine. *State v. Skjonsby,* 319 N.W.2d 764 (N.D.1982).

trine of imperfect self defense. *See* 18 Pa.Cons.Stat.Ann. § 2503(b) (Purdon 1983). This statute provides:

> (b) Unreasonable belief killing justifiable.—A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title (relating to general principles of justification), *but his belief is unreasonable.*

*Id.* (emphasis supplied). In a recent interpretation of this statute, the Supreme Court of Pennsylvania noted that homicide is mitigated from murder to voluntary manslaughter when the defendant subjectively believes circumstances exist to justify the killing, but objective reality negates that existence. *Commonwealth v. Carter,* 502 Pa. 433, 466 A.2d 1328, 1332 (1983). "Logically, the defendant's belief, sincere though unreasonable, negates malice." *Id.* This statute thus permits mitigation under the theory of mistaken belief of the existence of facts that would have justified the killing had those facts actually existed.

Similar to Pennsylvania, Illinois [2] and Wisconsin [3] have likewise codified the imperfect self defense doctrine in their

---

**2.** The Illinois statute provides:

> A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, but his belief is unreasonable.

Ill.Ann.Stat. ch. 38, § 9–2(b) (Smith-Hurd Supp.1984–1985) (footnote omitted). For a discussion of this statute, *see* Comment, *Defining the Crime of Excessive Self-Defense: Voluntary Man-Slaughter In Illinois,* 3 N.Ill.U.L.Rev. 217 (1982).

**3.** The Wisconsin statute provides in pertinent part:

> Whoever causes the death of another human being under any of the following circumstances is guilty of a Class C felony:
>
> \*  \*  \*  \*  \*  \*
>
> (2) Unnecessarily, in the exercise of his privilege of self-defense or defense of others or the privilege to prevent or terminate the commission of a felony[.]

Wis.Stat.Ann. § 940.05(2) (West 1982).

voluntary manslaughter statutes based upon the honest but unreasonable belief standard. Wisconsin's statute, however, differs in wording from the Pennsylvania and Illinois laws. Under the the Wisconsin statute a defendant commits voluntary manslaughter on the basis of imperfect self defense when he believes that the act causing the death was necessary in the exercise of self defense but that the belief was unreasonable under the circumstances, *State v. Kelley*, 107 Wis.2d 540, 319 N.W.2d 869, 873 (1982); *Roe v. State*, 95 Wis.2d 226, 290 N.W.2d 291, 300 (1980), or he believes that the necessity of self defense is reasonable, but the deadly force used was unnecessary. *Ross v. State*, 61 Wis.2d 160, 211 N.W.2d 827, 830 (1973). Wisconsin's law thus goes a step further than the Pennsylvania and Illinois statutes by permitting a defendant to assert imperfect self defense when he resorts to unnecessary force although he reasonably believes that he must engage in self defense. Further, *Ross* apparently indicates that a defense predicated upon the unnecessary force variation of the doctrine cannot coexist with the honest but unreasonable belief variation. In short, a defendant relying upon the unnecessary force variation must have reasonably believed that he had to defend himself. The reverse is apparently also true: a defendant who honestly but unreasonably believed that he had to resort to self defense cannot use unnecessary force.

The Texas statute [4] governing imperfect self defense is "intricate" and is based upon the rationale that "a person

---

4. The Texas statute dealing with imperfect self defense provides:
   A person is justified in using deadly force against another:
   (1) if he would be justified in using force against the other under § 9.31 of this code;
   (2) if a reasonable person in the actor's situation would not have retreated; and
   (3) when and to the degree he reasonably believes the deadly force is immediately necessary:
      (A) to protect himself against the other's use or attempted use of unlawful deadly force; or
      (B) to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery.

may not take advantage of a necessity he has brought upon himself." Texas Penal Code Ann. § 9.32 practice commentary at 347 (Vernon 1974). Section 9.32 provides that when a person provokes a difficulty and then threatens or uses deadly force, the trier of fact is required to weigh the respective fault of the parties. The trier of fact focuses upon the culpable mental state required for the offense allegedly committed by the defendant. For instance, if a person provokes a difficulty without an intent to kill his opponent, but the victim reacts with the excessive use of deadly force, the person may be guilty of voluntary manslaughter depending on his culpability in the encounter. *Id.* at 348 (discussing situations where imperfect self defense would apply); *see Semaire v. State,* 612 S.W.2d 528 (Tex. Crim.App.1980).

In light of those decisions adopting the doctrine and the statutes providing for this mitigation defense, it is necessary to review Maryland's relatively recent venture into this area. Although other jurisdictions have long debated the merits of the doctrine, Maryland's experience with this doctrine is scarcely a decade old. Since 1975, the Court of Special Appeals has discussed the doctrine on at least six occasions, with four of the cases decided in 1975. Beginning with *Evans v. State,* 28 Md.App. 640, 658 n. 4, 349 A.2d 300 (1975), *aff'd,* 278 Md. 197, 362 A.2d 629 (1976), the Court of Special Appeals observed that the doctrine was "little more than an academic possibility". As discussed more fully below, this premature observation was dispelled later that year in *Shuck v. State,* 29 Md.App. 33, 349 A.2d 378 (1975), *cert. denied,* 278 Md. 733 (1976).

*Shuck* originated as a friendly automobile race between a Corvette sports car occupied by Jackman and Shuck and a GTO sports car driven by Voelker. During this race, Parker, who was driving a pickup truck, hit his head on his windshield when he was forced to take evasive action to

---

Texas Penal Code Ann. § 9.32 (Vernon Supp.1984).

avoid being hit by the racing automobiles. Parker pursued the automobiles to a small court into which the two sport cars had stopped, and blocked the single entrance with his truck. Parker approached the Corvette and, after shouting obscenities, reached into the automobile and struck Jackman in the face. Jackman then exited his vehicle and engaged in a struggle with Parker. Voelker then caused everyone to fall to the ground when he jumped onto the men. While Shuck was trying to pull Voelker from the pile, Voelker gripped him on the shoulders and began to hit him several times. Shuck ran to Jackman's automobile and obtained a baseball bat. Shuck returned with the bat and swung twice, hitting Voelker in the head once, thereby killing him.

Shuck was convicted of second degree murder and assault with intent to murder. In reversing these judgments the Court of Special Appeals held that the evidence generated a jury issue as to whether the doctrine of imperfect self defense might mitigate the homicide to voluntary manslaughter. The Court stated that Shuck was entitled to intervene in defense of his friend (Jackman) because the latter was neither an aggressor nor a mutual combatant. The *Shuck* court reasoned that a jury issue on this doctrine was generated because the defendant may have erroneously believed that he had a right to intervene in the defense of his companion and that he may have acted unreasonably in resorting to deadly force in what had been a non-deadly confrontation. In recognizing the doctrine the Court of Special Appeals noted that it was "highly persuaded" by the honest belief standard articulated by Professors Walter LaFave and Austin Scott in their treatise. *See* W. LaFave & A. Scott, *Handbook on Criminal Law* § 77, at 583–84 (1972). On this basis the intermediate appellate court reversed the conviction because the trial judge failed to instruct the jury on this issue of mitigation.

In *Wentworth v. State,* 29 Md.App. 110, 349 A.2d 421 (1975), *cert. denied,* 278 Md. 735 (1976), the defendant and her husband kidnapped a college professor from his home

and, later that evening, shot him to death. At trial, the defendant testified that she was "terrified" of her husband on this particular evening because he had accused her of having an adulterous relationship with the victim. As the result of her husband imbibing alcohol and ingesting drugs for a nervous condition, the defendant testified that he was "very paranoiac and was in another fit of rage[,]" and that she was afraid that she "would be killed at any minute." *Id.* 29 Md.App. at 116, 349 A.2d 421. A jury convicted her of second degree murder, kidnapping, and related offenses. On appeal, the defendant contended that under *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), the jury instruction unconstitutionally relieved the state of the burden of proof on the elements of the crime and any defense raised by the evidence. In a unanimous decision, the Court of Special Appeals agreed that the trial court's instruction impermissibly placed the burden on the defendant to reduce the charge from murder to manslaughter by showing mitigation. *Wentworth v. State, supra,* 29 Md. App. at 115, 349 A.2d 421. Although the *Wentworth* court found that the evidence failed to generate the complete defense of duress,[5] it generated the mitigation defense of "imperfect" duress because the defendant may in fact have been coerced into killing the victim. In reversing the lower court the Court of Special Appeals remarked:

Recognizing that an "imperfect" defense of duress may not exculpate a defendant in an unlawful homicide case but may supply that mitigation necessary to lower the degree of guilt from murder to manslaughter, we conclude that the appellant here had a genuine jury issue as to mitigation. As a result, the jury instruction which

---

**5.** The Court of Special Appeals held that the complete defense of duress is not available to a charge of murder. Thus, the defendant in Wentworth could not avail herself of this defense because she killed the victim. Under the imperfect duress theory, however, the homicide could be mitigated to manslaughter in the same fashion as imperfect self defense mitigates murder to manslaughter when perfect self defense is unavailable.

improperly placed upon her the burden of proving mitigation and which improperly relieved the State of its burden of proving the element of non-mitigation beyond a reasonable doubt requires a reversal under *Mullaney v. Wilbur [, supra,]* analyzed in *Evans v. State [, supra].*

*Id.* 29 Md.App. at 121, 349 A.2d 421.

In the last of the 1975 spate of imperfect defense cases, the Court of Special Appeals once again held that the evidence presented at trial generated the issue of mitigation by way of imperfect defense of habitation. *Law v. State,* 29 Md.App. 457, 349 A.2d 295 (1975), *cert. denied,* 278 Md. 726 (1976). Factually, the defendant, Law, got out of bed and went downstairs late one evening to investigate some noises outside. Law retrieved a shotgun he had bought for "home protection" two weeks earlier after his house had been burglarized. After hearing a scraping of his windowpane on his back porch and a voice saying "Let's go in," Law fired his shotgun toward the back door at waist level. The shotgun blast struck and killed a police officer who was trying to enter the house to investigate a suspected burglary attempt. Unknown to Law, his neighbor had summoned police to report a suspected burglary attempt.

Law was eventually convicted in a non-jury trial of second degree murder and assault with intent to murder. On appeal the Court of Special Appeals concluded that these facts, specifically Law's mistaken belief that his home was about to be burglarized, raised the issue of mitigation by way of imperfect defense of habitation. As a consequence, the court reversed the judgments and remanded the case for a new trial.[6]

A case decided after the Court of Special Appeals decision in the case *sub judice* discussed the doctrine of imperfect self defense. *Cunningham v. State,* 58 Md.App. 249, 473

---

6. Shortly after we denied Law's petition for writ of certiorari, Law pleaded guilty to manslaughter and was sentenced to 10 years' imprisonment. The Circuit Court for Charles County suspended the sentence, and placed Law on probation for five years.

A.2d 40, *cert. denied,* 300 Md. 316, 477 A.2d 1195 (1984). In noting a recent "trend on the part of the defense bar to invoke this esoteric doctrine with inappropriate and promiscuous frequency," the appellate court discussed at length that the purpose of this doctrine is "to recognize certain errors in judgment as extenuating factors." *Id.* 58 Md.App. at 253, 473 A.2d 40. Unlike the cases above, the defendant in *Cunningham* failed to meet his burden of production to generate a genuine jury issue as to imperfect self defense or, for that matter, perfect self defense. Factually, the defendant armed himself with a shotgun and went looking for the person (the ultimate homicide victim) who had taken his moped earlier that day. Upon locating the victim, Cunningham produced his weapon and ordered some bystanders to clear the area. Although the victim was leaning on the moped and was "putting his hands by his pants," Cunningham claimed that he thought that the victim was "grabbing for something" and had a "gun or something." Based on these observations, Cunningham testified that he was "afraid that he would be killed." *Id.* 58 Md.App. at 254, 473 A.2d 40. Cunningham then shot and fatally wounded the victim.

The trial court refused to instruct the jury as to either perfect or imperfect self defense, and the defendant was convicted of second degree murder. The Court of Special Appeals affirmed, concluding that the defendant was not entitled to an instruction on the defense of imperfect self defense. The intermediate appellate court reasoned that the partial proof of one element of perfect self defense does not necessarily give rise to an instruction as to imperfect self defense; rather, the defendant must first produce a prima facie case as to the other necessary elements of that defense.

Our review of the development of the imperfect defense doctrine and examination of the jurisdictions that have addressed circumstances when the doctrine is applicable convinces us that the honest but unreasonable belief standard of imperfect self defense is the proper one to be

followed in Maryland. In *Faulkner v. State, supra,* Judge Orth (specially assigned) clearly articulated for the intermediate appellate court the ingredients of that defense. He stated:

> Perfect self-defense requires not only that the killer subjectively believed that his actions were necessary for his safety but, objectively, that a reasonable man would so consider them. Imperfect self-defense, however, requires no more than a subjective honest belief on the part of the killer that his actions were necessary for his safety, even though, on an objective appraisal by a reasonable man, they would not be found to be so. If established, the killer remains culpable and his actions are excused only to the extent that mitigation is invoked.

*Id.* 54 Md.App. at 115, 458 A.2d 81 (footnote omitted).

■ We agree that this statement represents an analytically sound view, and reflects the position taken by a majority of those jurisdictions that have addressed and embraced this defense. Logically, a defendant who commits a homicide while honestly, though unreasonably, believing that he is threatened with death or serious bodily harm, does not act with malice. Absent malice he cannot be convicted of murder. Nevertheless, because the killing was committed without justification or excuse, the defendant is not entitled to full exoneration. Therefore, as we see it, when evidence is presented showing the defendant's subjective belief that the use of force was necessary to prevent imminent death or serious bodily harm, the defendant is entitled to a proper instruction on imperfect self defense.[7]

A proper instruction when such evidence is present would enable the jury to reach one of several verdicts: (1) if the jury concluded the defendant did not have a subjective

---

7. Because this case presents the sole issue of imperfect self defense, we express no opinion as to the applicability of other suggested forms of "imperfect" mitigation defenses, such as imperfect duress, imperfect defense of others, imperfect defense of property, imperfect right to prevent a felony, and imperfect necessity.

belief that the use of deadly force was necessary, its verdict would be murder; (2) if the jury concluded that the defendant had a reasonable subjective belief, its verdict would be not guilty; and (3) if the jury concluded that the defendant honestly believed that the use of force was necessary but that this subjective belief was unreasonable under the circumstances, then its verdict would be guilty of voluntary manslaughter. The reason courts have reached the third conclusion is that the conduct of the defendant in these circumstances negates the presence of malice, a prerequisite to a finding of murder, but the defendant is nevertheless to blame for the homicide and should not be rewarded for his unreasonable conduct.

The State contends that imperfect self defense should only be available if the facts indicate extreme extenuating circumstances. We are somewhat at a loss to address this contention because the State fails to provide a clear definition of an "extreme extenuating circumstance." To be sure, many imperfect self defense cases involve compelling fact situations. The logic behind this mitigation defense, however, has a much broader range. For instance, a defendant can have a honest but unreasonable belief in his right to defend himself in a myriad of extraordinary as well as mundane situations. Moreover, the State does not point to any court of last resort that has expressly limited the defense to "extreme extenuating circumstance[s]." In any event, the facts of cases involving imperfect self defense do not lend themselves to the categorization advanced by the State. Illustrative of this point is *People v. Lockett*, 82 Ill.2d 546, 45 Ill.Dec. 900, 413 N.E.2d 378 (1980).

In *Lockett*, an eighteen year old defendant and his companions, while in the defendant's automobile, became embroiled in an argument with the seventy-eight year old victim, who was allegedly blocking a portion of the road with his pushcart load of glass bottles. When the victim picked up a brown whiskey bottle from the cart, one of Lockett's companions warned Lockett to "watch out." Lockett produced a handgun and shot the victim because

Lockett "thought [the victim] had a gun." The victim, who was fatally wounded, was in fact unarmed. At trial, the judge refused to instruct the jury as to voluntary manslaughter based upon an unreasonable belief of justification because the judge thought that the instruction was incompatible with a self defense instruction, which he gave. After being convicted of murder, Lockett appealed, claiming that the trial court erred in refusing to give the requested instruction. The Illinois intermediate appellate court reversed and remanded the decision, *People v. Lockett*, 75 Ill.App.3d 183, 31 Ill.Dec. 122, 394 N.E.2d 38 (1979), and the Supreme Court of Illinois granted leave to appeal. In a unanimous decision, that court held that a trial court should instruct the jury as to perfect self defense and voluntary manslaughter when evidence is presented showing that the defendant subjectively believed that the use of force was necessary. If the jury determines that the defendant's subjective belief was reasonable, the defendant is entitled to an acquittal. If, however, the jury finds that the defendant's subjective belief was unreasonable, the defendant is guilty of voluntary manslaughter. *People v. Lockett, supra*, 82 Ill.2d 546, 45 Ill.Dec. at 903, 413 N.E.2d at 381. The *Lockett* court found that the trial court erred in refusing to instruct the jury as to "unreasonable belief" voluntary manslaughter because the jury could likely agree with Lockett's contention that he acted in the belief that his conduct was justified and that his belief was unreasonable. *Id.* 82 Ill.2d at 546, 45 Ill.Dec. at 904, 413 N.E.2d at 382.

The State also contends that the Court of Special Appeals erred in its observation that the mitigation defense of imperfect self defense is necessarily raised when the defendant generates the issue of justification or excuse by way of perfect self defense. *Faulkner v. State, supra*, 54 Md.App. at 118 n. 5, 458 A.2d 81. It is hard to imagine a situation where a defendant would be able to produce sufficient evidence to generate a jury issue as to perfect self defense but not as to imperfect self defense. It seems clear to us that if the reasonableness of a defendant's belief

is at issue, as it is in self defense, *a fortiori*, the existence of that belief is also at issue. Therefore, the jury must reject the reasonableness of the defendant's belief as well as the existence of that belief to find the defendant guilty of murder. Thus, we think the intermediate court's observation was correct.

The State next argues that a recognition of imperfect self defense is inconsistent with our decision in *Johnson v. State*, 292 Md. 405, 439 A.2d 542 (1982). We disagree. *Johnson* refused to recognize the defense of "diminished capacity," under which a defendant is allowed to present any evidence that is relevant to the existence of a specific intent, including evidence of abnormal mental conditions not constituting legal insanity, for the purpose of negating that specific intent. The case *sub judice* is distinguishable because the court in *Johnson* held that, for policy reasons, psychiatric testimony is inadmissible to negate mens rea except in the context of an insanity defense short, *Johnson* is limited to mitigation defenses proved by psychiatric or psychological testimony.

The State also claims that the subjective nature of imperfect self defense warrants its rejection because the defense rewards unreasonableness. This contention is unpersuasive for two reasons. First, criminal law is predicated on the concept that an offender's level of culpability is dependent on his mental state. Strict liability offenses are the exception, not the rule. Second, a mitigation defense such as imperfect self defense provides little reward for unreasonableness: a conviction of manslaughter rather than murder. Although the difference is substantial, a successful defense based on imperfect self defense never results in the exculpation of the defendant.

## II

Faulkner seeks to apply the mitigation defense of imperfect self defense to the statutory offense of assault with intent to murder under Md.Code (1957, 1982 Repl.Vol.), Art.

**504**

27, § 12.[8]  A proper analysis of this statute requires us to take heed of the principle of statutory construction that in determining the real legislative intent, we consider the "language of an enactment in its natural and ordinary signification." *City of Baltimore v. Hackley*, 300 Md. 277, 283, 477 A.2d 1174 (1984). In view of this principle § 12 does no more than use the term "murder." The statute does not define the term or limit it in any manner. The "natural and ordinary signification" of this term is that the General Assembly intended to incorporate the common law of murder into this particular statute. Indeed, we have repeatedly defined the offense of assault with intent to murder as an assault upon the victim coupled with an intent to murder, which can be shown that the crime would have been murder if the victim had died. *E.g., Hardy v. State*, 301 Md. 124, 482 A.2d 474 (1984); *Taylor v. State*, 238 Md. 424, 209 A.2d 595 (1965); *Bird v. State*, 231 Md. 432, 190 A.2d 804 (1963). Logically, because the statutory offense is defined in terms of murder, all the defenses available in a murder prosecution are applicable in an assault with intent to murder prosecution. There is, however, one difference in the effect that the defenses to the statutory crime have on the offense. For murder, mitigation defenses reduce the offense to manslaughter. By contrast, for assault with intent to murder, a mitigation defense reduces the crime to, at most, simple assault. The rationale behind this result is that Maryland does not recognize the offense of assault with intent to manslaughter.

---

**8.**  Section 12 provides in full:
>   Every person convicted of the crime of an assault with intent to rob, is guilty of a felony and shall be sentenced to imprisonment for not less than two years or more than ten years. Every person convicted of the crime of an assault with intent to murder is guilty of a felony and shall be sentenced to imprisonment for not less than two years nor more than 30 years. Every person convicted of the crime of an assault to commit a rape in any degree or a sexual offense in the first or second degree is guilty of a felony and shall be sentenced to imprisonment for not less than two years nor more than 15 years.

■ On the basis of the foregoing, we hold that the mitigation defense of imperfect self defense applies to the statutory crime of assault with intent to murder under § 12 of Art. 27. To determine whether the trial court erred in refusing to instruct the jury as to imperfect self defense in the case *sub judice* we must again analyze the facts that gave rise to this issue.

During the early evening hours of September 15, 1981, Jimmy Emanuel became embroiled in an argument with a young male outside of a Baltimore City bar. Shortly after Rickey broke up this argument, Jimmy began to argue with another person. Faulkner approached Jimmy and joined in the argument. That much is clear; less clear is what immediately followed given the confusing and conflicting trial testimony of witnesses. According to Jimmy, Faulkner intervened without any encouragement or invitation by Jimmy. Faulkner, however, claimed that Jimmy directed an insulting remark to him. This argument quickly escalated into a fight between Jimmy and Faulkner. At trial, Jimmy claimed that after he swung and kicked at Faulkner, Faulkner produced a handgun, placed it directly in Jimmy's face, and pulled the trigger. The weapon, however, misfired. Faulkner disputed this account, arguing that Jimmy was the first participant to resort to lethal force. In support of his contention, Faulkner testified that he knew that Jimmy carried a knife and that someone in the crowd had yelled that Jimmy in fact had a knife. Indeed, Jimmy conceded at trial that at the time of this imbroglio he had an open pocket knife in his back pocket. Based upon these perceptions, Faulkner contended that he believed that Jimmy was approaching him with a knife with the intent to inflict death or serious bodily harm, in response to which Faulkner produced the handgun and began firing. Faulkner shot Rickey Emanuel twice in the chest as Rickey tried to push his brother from the handgun's line of fire.

Based on these facts, the jury evidently concluded that a reasonable person would not have believed Jimmy to be so armed by virtue of the jury's rejection of the perfect self

defense theory. Whether the jury would have concluded that Faulkner had a subjectively honest but objectively unreasonable belief that he was in deadly peril is an open question that the jury never had an opportunity to answer.

■ In sum, Faulkner produced evidence sufficient to generate a jury issue as to whether he had a subjectively honest but objectively unreasonable belief that he was in imminent danger of death or serious bodily injury, and the trial court should have granted his requested instruction on imperfect self defense.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED.

COSTS TO BE PAID BY MAYOR AND CITY COUNCIL OF BALTIMORE.