882 A.2d 323

Kalilah Romika STEVENSON

v.

STATE of Maryland.

No. 730, Sept. Term, 2004.

Court of Special Appeals of Maryland.

Sept. 6, 2005.

**692**

Mark Colvin (Nancy S. Forster, Public Defender, on the brief), Baltimore, for appellant.

Devy Patterson Russell (J. Joseph Curran, Jr., Attorney General, on the brief), Baltimore, for appellee.

Panel: KRAUSER, SHARER and ROBERT L. KARWACKI (Retired, Specially Assigned), JJ.

KRAUSER, J.

Appellant, Kalilah Romika Stevenson, was convicted of first degree assault [1] by a jury in the Circuit Court for Wicomico County, after her request for a jury instruction "on hot blooded response to mutual combat" was denied. That ruling was erroneous, she claims, because it denied her what Maryland law should permit. Such an instruction, she points out, is allowed in murder cases to reduce that offense to manslaughter. Why then, she asks, should it not be permitted in first degree assault cases, to reduce that crime to second degree assault. To allow that instruction in murder but not assault cases creates, she suggests, a paradox: If the victim dies, the

---

1. Appellant was also convicted of the lesser crimes of second degree assault, reckless endangerment, and malicious destruction of property with a value of less than $500.

assailant may invoke this defense; if the victim lives, he may not. That, in turn, produces a disturbing sentencing incongruity: Because the maximum sentence for first degree assault is twenty-five years while the maximum penalty for voluntary manslaughter is only ten, an assailant, who can claim adequate provocation, faces a shorter maximum sentence under the law if he kills rather than injures. Thus the law provides a motive to murder.

Although we acknowledge that appellant's position is neither illogical nor unreasonable and that other states have legislatively approved adequate provocation as a mitigating circumstance in assault cases,[2] we cannot ignore the unwavering line of appellate decisions confining this mitigation defense to murder and its "shadow" offenses. Maryland, at least for now, confines consideration of mitigation in assault cases to the discretion of the court at sentencing. If any change is to be made, it must be done by the Court of Appeals or the legislature. We shall affirm the judgments of the circuit court, confident that we have not heard the last of this matter.

## BACKGROUND

When the assault at issue occurred, appellant and the victim, Antonio Corbin, were married but living apart. Although their three-year-old daughter, Alize Corbin, lived with appellant, on the day of the stabbing she was visiting with her father. When, on that day, Alize became ill, her father and his girlfriend took Alize to the emergency room of a nearby hospital.

Learning that her husband and his girlfriend had taken Alize to the emergency room without first calling Alize's doctor, as appellant's medical insurance required, an angry and upset appellant went to the emergency room. When she arrived, she and her estranged husband began to argue. The

---

**2.** Colo Rev. Stat. Ann. § 18–3–202(2)(a),(b) (West 2004); Ky.Rev.Stat. Ann. § 508.040 (Michie 1999); Mo. Ann. Stat. § 565.060 (West 1999); N.J. Stat. Ann. § 2C:12–1 (West 1995); Ohio Rev.Code Ann. § 2903.12 (Anderson 2004).

argument spilled into the parking lot and eventually culminated, several hours later, in a violent confrontation between appellant and her husband at his mother's house. As her husband was leaving the house, appellant allegedly grabbed a butcher knife from the kitchen and stabbed him twice in the left arm. His wounds required 126 stitches and resulted in a loss of sensation in his left hand.

## DISCUSSION

 "In deciding whether a trial court was required to give a requested instruction, an appellate court 'must determine whether the requested instruction constitutes a correct statement of the law; whether it is applicable under the facts and circumstances of this case; and whether it has been fairly covered in the instructions given.' " *Ellison v. State*, 104 Md.App. 655, 660, 657 A.2d 402 (1995) (quoting *Mack v. State*, 300 Md. 583, 592, 479 A.2d 1344 (1984)). The only question before us is whether the requested instruction was a legally correct statement of the law. It was not.

 Hot blooded response to mutual combat can, in Maryland, reduce murder to manslaughter. This mitigating circumstance occurs "when persons enter into angry and unlawful combat with a mutual intent to fight and, as a result of the effect of the combat, the passion of one of the participants is suddenly elevated to the point where he resorts to the use of deadly force to kill the other solely because of an impulsive response to the passion and without time to consider the consequences of his actions." *Sims v. State*, 319 Md. 540, 552, 573 A.2d 1317 (1990). It falls, together with other forms of hot blooded response,[3] within what has been dubbed the "hot

---

3. Other sources of adequate provocation have been: "discovering one's spouse in the act of sexual intercourse with another"; "assault and battery"; "recognizing injury to one of the defendant's relatives or to a third party"; and "death resulting from resistance of an illegal arrest." *Girouard v. State*, 321 Md. 532, 538, 583 A.2d 718 (1991). "Discovering one's spouse in the act of sexual intercourse with another," however, no longer constitutes "legally adequate provocation for the purpose of mitigating a killing from the crime of murder to voluntary man-

blooded response to adequate provocation" rule, or the "Rule of Provocation." *See McKay v. State*, 90 Md.App. 204, 212–13, 600 A.2d 904 (1992).

■ To invoke that rule:

(1) [t]here must have been adequate provocation;

(2) [t]he **killing** must have been in the heat of passion;

(3) [i]t must have been a sudden heat of passion—that is, the **killing** must have followed the provocation before there had been a reasonable opportunity for the passion to cool; [and]

(4) [t]here must have been a causal connection between the provocation, the passion, and the **fatal act.**

*Sims*, 319 Md. at 551, 573 A.2d 1317 (emphasis added and citation omitted).

The very definition of this rule, interwoven, as it is, with repeated references to homicide, limits its application to murder. To be applicable, it expressly requires that the **killing** occurred in the heat of passion, that the **killing** followed the provocation, and that the **fatal act** was causally linked to the provocation and the passion.

The narrow scope of this mitigation defense has been confirmed by the Court of Appeals: "Although widely accepted as a mitigating circumstance in murder cases," hot blooded response to adequate provocation "has not ordinarily been used to reduce the grade or degree of any crime other than murder." *Richmond v. State*, 330 Md. 223, 232, 623 A.2d 630 (1993).

The only exception to this limitation are cases involving what Judge Moylan called, in *Bryant v. State*, the "inchoate, shadow crimes" of criminal homicide, that is, crimes such as "assault with intent to murder, attempted murder, and conspiracy to murder." 83 Md.App. 237, 244, 574 A.2d 29 (1990).

slaughter even though the killing was provoked by that discovery." Md.Code (1957, 2002 Repl.Vol.), § 2–207 of the Criminal Law Article.

But, as we shall see, first degree assault does not fall within the shadow cast by murder, as these crimes do.

Although there are no cases in Maryland that expressly address the applicability of the "hot blooded response" mitigator to first degree assault, that is not true of another offense mitigator—"imperfect self-defense." Since both imperfect self-defense and hot blooded response operate to negate the malice necessary to prove murder, they are, for at least this purpose, doctrinal analogues. Consequently, the rationale for either extending the doctrine of imperfect self-defense or declining to do so in non-murder cases provides compelling authority for reaching the same result where hot blooded response to adequate provocation has been invoked. In other words, the scope of their application is, in this instance, co-extensive.

The first such case is *State v. Faulkner*, 301 Md. 482, 483 A.2d 759 (1984). There, the Court of Appeals addressed the question whether imperfect self-defense was applicable to assault with intent to murder, the statutory predecessor of first degree assault. Given that assault with intent to murder is defined "as an assault upon the victim coupled with an intent to murder, which can be shown that the crime would have been murder if the victim had died[,]" *id.* at 504, 483 A.2d 759, it logically follows, the Court stated, that because that offense "is defined in terms of murder, all the defenses available in a murder prosecution are applicable in an assault with intent to murder prosecution." *Id.* It therefore declared that imperfect self-defense reduces assault with intent to murder "to, at most, simple assault," as Maryland does not recognize "assault with intent to commit voluntary manslaughter." *Id.*

Six years later, in *Bryant*, 83 Md.App. at 239, 574 A.2d 29, this Court held that imperfect self-defense is not applicable to the crimes of statutory maiming and assault with intent to disable, explaining:

Criminal homicide is extremely unusual in its proliferation of levels or degrees of blameworthiness. Except for its

reflected influence on its inchoate, shadow crimes of assault with intent to murder, attempted murder, and conspiracy to murder, it alone has an extenuated or mitigated form (voluntary manslaughter) for purposes of lowering the maximum punishment.

Voluntary manslaughter is something other than the mere absence of aggravating factors that would raise the level of guilt to murder in either the first or second degree. It is predicated upon the affirmative presence of some extenuating fact that will operate to mitigate the level of guilt and, therefore, the punishment. One of the extenuating factors that gives rise to the crime of voluntary manslaughter is that of imperfect self-defense.

*Id.* at 244, 574 A.2d 29. We then declared that "imperfect self-defense as a mitigating factor (as, indeed, the very phenomenon of mitigation generally) is limited to criminal homicide and its shadow forms ..." *id.*, adding "[w]ith respect to all other crimes, the defendant is either guilty or not guilty.... There is no 'in between.' " *Id.* at 245, 574 A.2d 29.

Two years after that, the Court of Appeals expressed its agreement with that principle in *Watkins v. State*, 328 Md. 95, 613 A.2d 379 (1992). In that case, Watkins was charged with multiple counts of unlawful shooting with intent to disable, use of a handgun in the commission of a crime of violence, and battery. *Id.* at 97, 613 A.2d 379. In affirming his convictions for those offenses, the Court rejected, among other things, Watkins's suggestion that he had "at least generated a question of 'imperfect' self-defense." *Id.* at 106, 613 A.2d 379. In so doing, it observed that "the defense of imperfect self-defense does not apply to and is not available to mitigate any of the crimes of which the defendant was convicted." *Id.* And, in a footnote to that observation, the Court reaffirmed the limited applicability of such mitigation defenses by conceding that the *Faulkner* Court's application of imperfect self-defense to a prosecution for assault with intent to murder was "a generous expansion of the law of self-defense." *Id.* at 106 n. 3, 613 A.2d 379.

The issue of the applicability of imperfect self-defense to assaultive crimes returned in *Richmond v. State,* 330 Md. at 223, 623 A.2d 630. In that case, the defendant was convicted of malicious wounding with intent to disable and battery. 330 Md. at 227, 623 A.2d 630. On appeal, he contended that the circuit court erred in failing to instruct the jury on the issue of imperfect self-defense. A finding of imperfect self-defense by the jury, he claimed, "would [have] mitigate[d] the . . . aggravated assault charges to 'assault and battery.' " *Id.*

Because imperfect self-defense negates malice, the defendant pointed out, it reduces murder to voluntary manslaughter. That time-honored doctrine, he insisted, leads to the conclusion that "the principles of imperfect self-defense apply to every crime that requires proof of malice without regard to whether a criminal homicide is involved." *Id.* In other words, "anything that 'negates malice,' " he concluded, "must mitigate an offense requiring proof of malice to a lesser offense." *Id.*

The Court of Appeals disagreed. "Malice," the Court explained, "is a chameleonic term, taking on different meanings according to the context in which it is used." *Id.* at 231, 623 A.2d 630. "In the context of murder cases," the Court continued, "malice means the presence of the required malevolent state of mind coupled with the absence of legally adequate justification, excuse, or circumstances of mitigation." *Id.* at 231, 623 A.2d 630. In contradiction to the "malice" that defines murder, "malice" in non-murder criminal cases "does not include the concept of absence of mitigation." *Id.* at 233, 623 A.2d 630. That is, unlike murder malice, non-murder malice cannot be mitigated by circumstance. Or, as the Court of Appeals put it, "mitigation that will reduce one offense to another is a concept peculiar to criminal homicide cases." *Id.* The Court thereupon affirmed the principle enunciated by this Court in *Bryant,* that the concept of mitigation is limited to criminal homicide and its shadow forms. *Id.* at 233, 623 A.2d 630 (quoting *Bryant,* 83 Md.App. at 244, 574 A.2d 29).

Because that principle is now firmly embedded in Maryland law, appellant shrinks from claiming that the murder mitiga-

tion defenses apply to all "malice" crimes, as the *Richmond* defendant did. Instead, she argues that first degree assault is the "functional equivalent" of one of the so-called "shadow offenses" of murder, namely, assault with intent to murder, its statutory predecessor. She reasons:

> Given the substantial similarity between the specific intent to kill required by assault with intent to murder and the specific intent to cause serious physical injury required by the ... first degree assault statute, the fact that the intent to cause serious physical injury required by first degree assault is virtually identical to the intent to do serious bodily harm required for second degree murder, and the fact that first degree assault replaced assault with intent to murder in Maryland's scheme of punishing aggravated assaults,[4] it is clear that first degree assault has become the functional equivalent of assault with intent to murder.

That argument does not survive analysis. When the elements of first degree assault are compared to the elements of assault with intent to murder, it becomes readily apparent that first degree assault is not the "functional equivalent" of assault with intent to murder.

"To support a charge of assault with intent to murder it is generally recognized that there must be proof of both an assault and an intention to murder." *State v. Jenkins*, 307 Md. 501, 512, 515 A.2d 465 (1986) (citation and emphasis omitted). To prove an intention to murder, the State must prove that the defendant acted with the kind of malice required by murder, and with the specific intent to murder.

In contrast, the current first degree assault statute provides:

> (1) A person may not intentionally cause or attempt to cause serious physical injury to another.

---

4. The former crime of assault with intent to murder, along with the crimes of assault with intent to rob and assault with intent to rape, were repealed and replaced by the current crimes of first degree and second degree assault. *See,* 1996 Md. Laws, Chap. 632.

(2) A person may not commit an assault with a firearm. . . .
Md.Code (1957, 2002 Repl.Vol.), § 3–202 of the Criminal Law Article.

Absent from the definition of first degree assault is the element of malice, an important component of an assault with intent to murder. That omission proves fatal to appellant's analogy, as it is the function of mitigation defenses to negate malice. Thus first degree assault is hardly the "functional equivalent" of assault with intent to murder.

And finally, appellant points out, "to hold that the mitigation defense of hot blooded response to adequate provocation does not apply to first degree assault would lead to an absurd result." She explains:

> If a person, acting with the intent to kill, stabs another in a hot blooded response to adequate provocation, and the victim dies, the defendant is guilty of voluntary manslaughter and subject to a maximum penalty of 10 years imprisonment. If the defendant, acting with the intent to cause serious physical injury, stabs the victim under the same circumstances but the victim lives, and if the rule of provocation does not apply to first degree assault and cannot mitigate first degree assault to second degree assault, the defendant is guilty of first degree assault and subject to a maximum penalty of 25 years imprisonment.

But sentencing anomalies are not new to Maryland law. Before the current assault statute was enacted, Maryland recognized the assaultive crimes of assault with intent to murder, assault with intent to rob, and simple or common law assault. At that time, while the statutory maximum sentence for assault with intent to murder was thirty years, and the statutory maximum sentence for assault with intent to rob was ten, simple assault, the lesser included offense of both of these crimes had, as a common law crime, no statutory maximum. *See Simms v. State*, 288 Md. 712, 719–20, 421 A.2d 957 (1980).[5]

---

5. This sentencing structure was superseded by statute by 1996 Md. Laws, Chap. 632.

Thus, simple assault carried a potentially greater penalty than its graver counterparts. Yet, our appellate courts have declined to declare such sentencing incongruities illegal or unconstitutional, preferring, instead, to address the issue only when the incongruity actually produces an inequitable result. *See Id.*

For example, in *Simms*, two defendants, Simms and Thomas, were charged separately with, among other things, assault with intent to rob and simple assault for two unrelated incidents. *Id.* at 715, 717, 421 A.2d 957. After separate trials, both defendants were found guilty of only simple assault and both were sentenced to twelve years' incarceration—two years longer than the statutory maximum for assault with intent to rob. *Id.* at 717, 718, 421 A.2d 957. Vacating their sentences, the Court of Appeals stated: "To uphold the twelve year sentences under these circumstances would be to sanction an extreme anomaly in the criminal law." *Id.* at 723, 421 A.2d 957. The Court explained: "[W]hen a defendant is charged with a greater offense and a lesser included offense based on the same conduct, with jeopardy attaching to both charges at trial, and when the defendant is convicted only of the lesser included charge, he may not receive a sentence for that conviction which exceeds the maximum sentence which could have been imposed had he been convicted of the greater charge." *Id.* at 724, 421 A.2d 957. The Court expressly declined to find the sentencing scheme, which produced the anomaly, either illegal or unconstitutional. *Id.* at 725, 421 A.2d 957.

As we conclude this opinion, we note that, in her reply brief, appellant contends, for the first time, that the sentencing "absurdity" of which she complains is unconstitutional. That bald assertion is followed by nothing more than a citation to *People v. Montoya*, 196 Colo. 111, 582 P.2d 673 (1978). No further exposition or argument is offered. Because she failed to raise that argument in her initial brief or to present any argument for it in her reply brief, we shall, in accordance with Md. Rule 8–504(a)(5), give it no further consideration.

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANT.