951 A.2d 832

Daniel M. CHRISTIAN

v.

STATE of Maryland.

Kalilah Romika Stevenson

v.

State of Maryland.

Nos. 26, 95 Sept. Term, 2005.

Court of Appeals of Maryland.

June 30, 2008.

Martha Weisheit, Mark Colvin, Assistant Public Defenders (Nancy S. Forster, Public Defender, on the brief), Baltimore, for petitioner.

Brian S. Kleinbord, Jeremy M. McCoy, Assistant Attorney Generals (J. Joseph Curran, Jr., Attorney General of Maryland, on the brief), Baltimore, for respondent.

Argued before BELL, C.J., RAKER,* WILNER,* CATHELL,* HARRELL, BATTAGLIA and GREENE, JJ.

RAKER, J.

In *Christian v. State* and *Stevenson v. State,* these consolidated cases, we must determine whether certain mitigation defenses, applied thus far only to homicide offenses and assault with intent to murder, may now be applied to first degree assault. *See* Maryland Code (1957, 1996 Repl.Vol.), Art. 27 § 12A.[1] Daniel Christian contends that his first degree assault conviction should be mitigated to a second degree assault conviction based on the doctrine of imperfect self-defense. Kalilah Romika Stevenson similarly argues that her conviction for first degree assault should be mitigated to

---

* Raker, Wilner and Cathell, JJ., now retired, participated in the hearing and conference of these cases while active members of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, they also participated in the decision and adoption of this opinion.

1. Maryland Code (1957, 1996 Repl.Vol.), Art. 27 § 12A-1(a), now codified as amended at Md.Code (2002, 2006 Cum.Supp.), § 3–202 of the Criminal Law Article, provided the definition of first degree assault as follows:

 *"(a) Serious physical injury; use of a firearm.—*
 "(1) A person may not intentionally cause or attempt to cause serious physical injury to another.
 "(2) A person may not commit an assault with a firearm, including:
 (i) A handgun, antique firearm, rifle, shotgun, short-barreled shotgun, or short-barreled rifle, as those terms are defined in § 36F of this article;
 (ii) An assault pistol, as defined in § 36H–1 of this article;
 (iii) A pistol, revolver, or antique pistol or revolver, as those terms are defined in § 441 of this article;
 (iv) An assault weapon, as defined in § 481 E of this article; and
 (v) A machine gun, as defined in § 372 of this article."

second degree assault based on hot-blooded response to adequate provocation. We shall hold that the mitigation defense of hot-blooded response to adequate provocation as well as the common law doctrine of imperfect self-defense can apply to the crime of first degree assault.

## I.

### No. 26 Christian v. State

Petitioner Daniel Christian was charged with first degree assault, carrying a deadly weapon, and related charges in the Circuit Court for Baltimore County. Petitioner was tried by jury for the assault and deadly weapon charges on October 3, 2002.[2] The charges arose out of a confrontation instigated by Raynard Moulden, the victim, who suspected that Christian had become involved with Moulden's girlfriend. A confrontation involving these three people occurred in a mall parking lot. According to Moulden, he verbally accused the petitioner of sleeping with his girlfriend, and turned to "nudge" his girlfriend, whereupon the petitioner attacked him. Christian claimed, to the contrary, that Moulden "shoved" the girlfriend in the face, and that as Christian walked away from Moulden to avoid confrontation, Moulden ran up as if he was going to tackle petitioner. Christian said that he stabbed Moulden to defend himself. The girlfriend's statement to the police immediately following the incident largely corroborated petitioner's story; at trial, however, her testimony corroborated Moulden's version of events.

At trial, petitioner requested a jury instruction on imperfect self-defense as a defense to the first degree assault charge. The court denied this request. The jury convicted petitioner of first degree assault, second degree assault, and carrying a dangerous and deadly weapon openly with the intent to injure, and the court sentenced him to a term of incarceration for ten

---

**2.** Petitioner pled not guilty on an agreed statement of facts to possession of marijuana and malicious destruction of property and was found guilty of those charges. The assault and deadly weapon charges proceeded to trial before the Circuit Court for Baltimore County.

years for first degree assault. The remaining convictions merged for sentencing purposes. Petitioner noted a timely appeal to the Court of Special Appeals. Before that court, he argued that the trial court erred in refusing to instruct the jury on imperfect self-defense with respect to the charge of first degree assault. The Court of Special Appeals, in an unreported opinion, rejected petitioner's argument, stating as follows:

> "Since *Richmond*, there have been no changes to the legal landscape concerning the application of imperfect self-defense to offenses other than homicides, and we are not persuaded that the re-codification of the aggravated assaults calls into question the rationale for the holding in *Richmond*. That holding is as valid today as when *Richmond* was decided: imperfect self-defense only applies to homicide cases. [The petitioner] was not entitled to an instruction on that proposition, and the trial court correctly declined to give it."

This Court granted certiorari to consider whether, in light of the 1996 assault statutes and the recognition of first degree assault as a proper foundation for felony murder in *Roary v. State*, 385 Md. 217, 867 A.2d 1095 (2005), this Court should now recognize imperfect self-defense as a defense to first degree assault. *Christian v. State*, 387 Md. 465, 875 A.2d 769 (2005).

## No. 95 Stevenson v. State

Petitioner Kalilah Romika Stevenson was charged with first degree assault and related charges in the Circuit Court for Wicomico County. Petitioner proceeded to trial before a jury. The charges arose out of a violent confrontation between petitioner and her husband, Antonio Corbin, on September 3, 2003. The parties had separated and were living apart at the time that the incident occurred. Corbin had taken their daughter to the emergency room when she fell ill, and Stevenson arrived separately to complain that Corbin should not have taken the daughter to be treated without first calling the daughter's doctor, as Stevenson's insurance required. They

fought openly, and Corbin eventually left the hospital with his girlfriend, returning to his home in Salisbury, Maryland, where he resided with his mother.

Shortly thereafter, Stevenson arrived at Corbin's home to retrieve her daughter's book bag, and she began arguing with Corbin's mother. Corbin's testimony and Stevenson's testimony at trial presented conflicting versions of the events. Corbin testified that he intervened and began arguing with Stevenson, and that they were "pushing each other back and forth," and he tried to push her out of the house to calm her and his mother down. He said that he was walking out the back door when Stevenson took a butcher knife from the kitchen and stabbed him twice in his left forearm. He denied threatening Stevenson or approaching her in a threatening manner.

By contrast, Stevenson testified that when she attempted to retrieve her daughter's book bag, Corbin's mother pulled a gun on Stevenson. As she pushed the gun away, she claimed Corbin punched her and kept beating her until she found herself in the kitchen. There, she spotted the backpack, grabbed it and ran to her car. Stevenson testified that she did not grab a knife or stab Corbin. Stevenson testified that she was in fear for her life and stated that she had called the police and filed assault charges against Corbin on multiple prior occasions.

The trial court instructed the jury on self-defense, but denied petitioner's request that the jury be instructed on the mitigation defense of hot-blooded response to mutual combat, a form of legally adequate provocation, because the trial court found that the defense was inapplicable to first degree assault. The jury found petitioner guilty of first degree assault, second degree assault, reckless endangerment, and malicious destruction of property, and the court sentenced her to a term of incarceration of ten years for first degree assault and merged the remaining convictions.

Petitioner noted a timely appeal to the Court of Special Appeals, raising the issue of the court's refusal to grant the

jury instruction on hot-blooded response to adequate provocation. The Court of Special Appeals affirmed the conviction, reasoning that since assault was not a "shadow offense" of murder, the mitigation defense of hot-blooded response to adequate provocation was inapplicable. *Stevenson v. State,* 163 Md.App. 691, 696, 882 A.2d 323, 326 (2005). The Court of Special Appeals, however, stated as follows:

> "Although we acknowledge that appellant's position is neither illogical nor unreasonable and that other states have legislatively approved adequate provocation as a mitigating circumstance in assault cases, we cannot ignore the unwavering line of appellate decisions confining this mitigation defense to murder and its 'shadow' offenses. Maryland, at least for now, confines consideration of mitigation in assault cases to the discretion of the court at sentencing. If any change is to be made, it must be done by the Court of Appeals or the legislature. We shall affirm the judgments of the circuit court, confident that we have not heard the last of this matter."

*Id.* at 693, 882 A.2d at 324–25 (footnote omitted).

We granted certiorari to address whether the mitigation defense of hot-blooded response to mutual combat could apply to the crime of first degree assault. *Stevenson v. State,* 390 Md. 90, 887 A.2d 655 (2005).

## II.

Stevenson and Christian offer three basic arguments in favor of applying mitigation defenses to the crime of first degree assault to second degree assault. First, they argue that, in light of the recodification of the assault statutes in 1996, we should now recognize that imperfect self-defense may mitigate first degree assault. Petitioners contend that first degree assault is the equivalent of the former crime of assault with intent to murder, or that the intent to cause serious physical injury now supplies sufficient malice to recognize first degree assault as a shadow form of homicide. Second, petitioners note that, based on *Roary v. State,* 385 Md. 217, 867

A.2d 1095 (2005), first degree assault now serves as a predicate crime for felony murder, and as such, mitigation defenses should apply. Finally, petitioners argue that allowing the defenses would eliminate an anomaly in Maryland law, whereby a defendant whose victim dies may be sentenced to less time than a defendant whose victim lives. Petitioners cite to other states that allow for the mitigation of first degree assault.[3]

By contrast, the State argues that the question in this case is controlled by *Richmond v. State,* 330 Md. 223, 623 A.2d 630 (1993), where, prior to the 1996 statutes, we declined to expand the availability of mitigation defenses beyond assault with intent to murder. The State contends that the new statutes place the former crime of assault with intent to murder outside the scope of first degree assault, into the newly codified offense of attempted murder. The State invokes the principle of *stare decisis* and argues that, in accordance with our reasoning in *Richmond,* the new first degree assault statute does not require an intent or malice in the

---

**3.** *People v. Ramirez,* 18 P.3d 822, 828 (Colo.App.2000) (holding that "[a]s the assault statute is currently structured, provocation is neither a culpable mental state nor part of a culpable mental state. Contrary to defendant's contention, provocation does not affect the intent element of the offense of assault. Rather, it merely operates as a mitigator to lessen the consequences of an assault conviction"); *People v. Montoya,* 582 P.2d 673, 675–76 (Colo.1978) (holding that because, under the manslaughter statute, a person who intentionally causes the death of another in the mitigating factor of "heat of passion" is guilty of a class four felony and is subject to imprisonment for one to ten years, but a person who intentionally causes serious bodily injury under "heat of passion," is subject to conviction for first degree assault and imprisonment for a term of five to forty years, the result is constitutionally infirm, as it gives a greater penalty to the offender who acts with the less culpable intent and who causes the less grievous result); *State v. Deem,* 40 Ohio St.3d 205, 533 N.E.2d 294, 299 (1988) (holding that "as statutorily defined, the offense of aggravated assault is an inferior degree of the indicted offense—felonious assault—since its elements are identical to those of felonious assault, except for the additional mitigating element of serious provocation"); *State v. Butler,* 10 Neb.App. 537, 634 N.W.2d 46, 61 (2001) (stating that "the analysis of provocation which mitigates an intentional killing logically applies to assault cases as well, given that the core difference between the two crimes is generally whether the victim lives or dies").

same way as murder and its shadow forms, and therefore, a mitigation defense that operates in effect to negate malice is not applicable. Finally, the State contends that using *Roary* as a basis for allowing mitigation for first degree assault would undermine the purpose of the felony murder doctrine.

### III.

Before turning to whether mitigation defenses apply to the new assault statute, we review the relevant history of the crime of assault in Maryland. At common law, Maryland recognized the crime of assault and the closely related, but distinct, crime of battery.[4] *Robinson v. State*, 353 Md. 683, 692 n. 5, 728 A.2d 698, 702 n. 5 (1999); *Ford v. State*, 330 Md. 682, 700, 625 A.2d 984, 992 (1993). There were two forms of assault: an attempt to commit a battery and an intentional placing of another in apprehension of an immediate battery. *Ford*, 330 Md. at 699, 625 A.2d at 992. *See also Snowden v. State*, 321 Md. 612, 617, 583 A.2d 1056, 1059 (1991); *Dixon v. State*, 302 Md. 447, 457, 488 A.2d 962, 966 (1985).

In 1853, the Maryland Legislature created, statutorily, another, aggravated, form of assault that described the specific intent for its commission that must accompany the assault. The General Assembly provided that "any person [who] ... shall unlawfully and maliciously stab, cut or wound ... or shall assault or assault and beat any person, with intent to maim, disfigure or disable such person" shall be guilty of a felony. 1853 Md. Laws, Chap. 99 § 1 (codified at Md.Code (1888), Art. 27 § 189). *See also Hammond v. State*, 322 Md. 451, 453, 588 A.2d 345 (1991). This statute, amended over the years, was the predecessor of Md.Code (1957, 1992 Repl.Vol.), Art. 27 § 386.[5] With the advent of this and subsequent

---

4. So closely related and identified are assault and battery that, historically, they were often charged as a unit. *See Ford v. State*, 330 Md. 682, 700, 625 A.2d 984, 992 (1993).

5. Md.Code (1957, 1992 Repl.Vol.), Art. 27 § 386 was repealed in 1996. At that time, captioned, "Unlawful shooting, stabbing, assaulting, etc.,

**316**

aggravated assault statutes, assault took on yet another meaning. As we explained in *Ford,* "[i]n some contexts, the word 'assault' has still a third meaning. When part of a statutorily defined crime, assault can also encompass a completed battery. The crimes of assault with intent to murder or assault with intent to maim, for example, may include, but do not require, actual battery." *Ford,* 330 Md. at 699 n. 6, 625 A.2d at 992 n. 6.

By 1992, Article 27 of the Maryland Code contained several statutory provisions proscribing assault and battery type crimes. In addition to § 386, the Code included prohibitions against assault with intent to murder, ravish, or rob in § 12,[6]

---

with intent to maim, disfigure or disable to prevent lawful apprehension," it provided as follows:

"If any person shall unlawfully shoot at any person, or shall in any manner unlawfully and maliciously attempt to discharge any kind of loaded arms at any person, or shall unlawfully and maliciously stab, cut or wound any person, or shall assault or beat any person, with intent to maim, disfigure or disable such person, or with intent to prevent the lawful apprehension or detainer of any party for any offense for which the said party may be legally apprehended or detained, every such offender, and every person counselling, aiding or abetting such offender shall be guilty of a felony and, upon conviction are subject to imprisonment for not more than 15 years."

6. Md.Code (1957, 1992 Repl.Vol.), Art. 27 § 12 provided as follows:

"§ 12. Penalties.
"Every person convicted of the crime of an assault with intent to rob, is guilty of a felony and shall be sentenced to imprisonment for not less than two years or more than ten years. Every person convicted of the crime of an assault with intent to murder is guilty of a felony and shall be sentenced to imprisonment for not less than two years nor more than 30 years."

*Id.* Section 12 did not define the proscribed offenses; it simply prescribed the penalty for those proscribed assaults. The elements of those offenses were, instead, defined by case law. To prove the offense of assault with intent to murder, for example, the prosecution needed to show that there was an assault and that it was done with the "specific intent to kill under circumstances such that, if the victim had died, the offense would be murder." *Franklin v. State,* 319 Md. 116, 125–26, 571 A.2d 1208, 1212 (1990) (quoting *State v. Jenkins,* 307 Md. 501, 515, 515 A.2d 465, 472 (1986)).

To prove the offense of assault with intent to rob, the prosecution needed to show that there was (1) an assault on victim; (2) made by the

mayhem in § 384,[7] maiming in § 385,[8] assaults on inmates or Division of Corrections employees in § 11E,[9] and spousal assault in § 11F.[10]

In 1996, the General Assembly changed the legal landscape with regard to the law of assault and battery, both statutory and common law. It repealed the various assault type provisions in Article 27, replacing them with §§ 12, 12A,[11] and 12A–

---

accused; (3) with the intent to rob. *Dixon v. State,* 302 Md. 447, 451, 488 A.2d 962, 963 (1985).

To prove the offense of assault with intent to rape, the prosecution needed to show that there was (1) an assault, (2) with an intention to have carnal knowledge of a female, and (3) a purpose to carry into effect this intention with force and against the consent of the female. *Middleton v. State,* 6 Md.App. 380, 385–386, 251 A.2d 224, 227 (1969).

7. Md.Code (1957, 1992 Repl.Vol.), Art. 27 § 384 provided as follows:
 "Every person, his aiders and abettors, who shall be convicted of the crime of mayhem, or of tarring and feathering, shall be sentenced to the penitentiary for not more than ten years nor less than eighteen months."

8. Md.Code (1957, 1992 Repl.Vol.), Art. 27 § 385 provides in relevant part as follows:
 "Every person, his aiders, abettors and counselors, who shall be convicted of the crime of cutting out or disabling the tongue, putting out an eye, slitting the nose, cutting or biting off the nose, ear or lip, or cutting or biting off or disabling any limb or member of any person, of malice aforethought, with intention in so doing to mark or disfigure such person, shall be guilty of a felony and upon conviction are subject to imprisonment for not more than 15 years."

9. Md.Code (1957, 1992 Repl.Vol.), Art. 27 § 11E provided as follows:
 "(a) Assault on inmate or employee.—Every inmate convicted of assault on another inmate or on an employee of the Division of Correction, the Patuxent Institution, the Baltimore City Detention Center, or any county jail or detention center, regardless of employment capacity, shall be sentenced for the crime of assault under this section."

10. Md.Code (1957, 1992 Repl.Vol.), Art. 27 § 11F provided as follows:
 "(a) Assistance to victim.—Any person who alleges to have been a victim of espousal assault and who believes there is a danger of serious and immediate injury to himself or herself may request the assistance of a local law enforcement agency."

11. Md.Code (1957, 1996 Repl.Vol.), Art. 27 § 12A provided as follows:
 "§ 12A. Second degree assault.

1. 1996 Laws, Chap. 632. Section 12 defined the terms "assault" and "serious physical injury" as follows:

"(b) Assault.—Except as otherwise provided in this subheading, 'assault' means the offenses of assault, battery, and assault and battery, which terms retain their judicially determined meanings." (c)Serious physical injury.—'serious physical injury' means physical injury which:

(1) Creates a substantial risk of death;

(2) Causes serious permanent or serious protracted disfigurement;

(3) Causes serious permanent or serious protracted loss of the function of any bodily member or organ; or

(4) Causes serious permanent or serious protracted impairment of the function of any bodily member or organ."

Section 12A, proscribing second degree assault, provided that "[a] person may not commit an assault." Section 12A–1, the predecessor to current § 3–202 of the Criminal Law Article, provided as follows:

" § 12A–1. First degree assault.

"(a) Serious physical injury; use of a firearm.—

"(1) A person may not intentionally cause or attempt to cause serious physical injury to another.

"(2) A person may not commit an assault with a firearm, including:

(i) A handgun, antique firearm, rifle, shotgun, short-barreled shotgun, or short-barreled rifle, as those terms are defined in § 36F of this article;

(ii) An assault pistol, as defined in § 36H–1 of this article;

(iii) A pistol, revolver, or antique pistol or revolver, as those terms are defined in § 441 of this article;

(iv) An assault weapon, as defined in § 481E of this article; and

(v) A machine gun, as defined in § 372 of this article."

---

"(a) General Prohibition.—A person may not commit an assault."

This Court considered the effect of these statutory changes in *Robinson v. State*, 353 Md. 683, 728 A.2d 698 (1999). We were called upon in that case to determine whether common law assault and battery was a cognizable crime in Maryland after the effective date of the new 1996 statutory provisions. *Id.* at 686–87, 728 A.2d at 699. We held that it was not, stating that "by this statutory enactment the General Assembly repealed the common law crimes of assault and battery." *Id.* While recognizing the general principle that statutes are not presumed to repeal the common law, we noted that this principle does not apply where there is a conflict between a statute and the common law, or where the statute deals with an entire subject-matter. *Id.* at 693, 728 A.2d at 702–03. Although the 1996 statute contained no specific word of repeal or abrogation of the common law or any indication of a conflict, we stated as follows:

"[T]he statutes as adopted represent the entire subject matter of the law of assault and battery in Maryland, and as such, abrogate the common law on the subject. The 1996 statutes are more than mere penalty provisions for the common law offenses of assault and battery. They created degrees of assault unknown to the common law, and while retaining the common law elements of the offenses of assault and battery and their judicially determined meanings, the statutes repealed the statutory aggravated assaults and created new offenses.

"Perhaps ironically, some of the best evidence that the 1996 assault statutes comprise more than just penalty provisions for the common law offenses of assault and battery, and that they actually abrogated those common law offenses, derives from the fact that the statutes explicitly repealed and replaced the entire statutory scheme for aggravated assaults then existent, *i.e.*, Assault with Intent to Murder, Ravish or Rob, Assault–Third Person Aiding One Being Assaulted, and Assault by Inmates, as well as the crime of Maiming. *See* 1996 Laws of Maryland, Ch. 632, § 1, at 3616–17 and 3629; Maryland Code (1957, 1992 Repl.Vol., 1995 Supp.) Article 27, §§ 11E, 12, 12A, and 384–86."

*Id.* at 694, 728 A.2d at 703. We went on to note that "the new statutes thus subsumed all previous statutory assault provisions as well as the common law into a single scheme and established a two-tiered regimen." *Id.*

■ By its terms, viewed in the context of the applicable definition of "serious physical injury," the first degree assault statute now covers the most serious assaults, including those former aggravated assaults, whose commission ordinarily, although certainly not always, involved the commission of a battery, *e.g.,* assaults with intent to murder, maim and disfigure. Second degree assault, on the other hand, encompasses all other assaults and batteries, including those former aggravated assaults that ordinarily did not involve completed batteries, *e.g.,* assault with intent to rob, provided that no firearm was used.

In *Dixon v. State,* 364 Md. 209, 772 A.2d 283 (2001), this Court considered the new statutory offense of first degree assault in the context of merger. In *Dixon,* the defendant was originally convicted by jury trial in the Circuit Court for Prince George's County of first degree assault, attempted voluntary manslaughter, and the use of a handgun in the commission of a crime of violence. The Court of Special Appeals, in an unreported opinion, reversed and remanded for a new trial. On remand, the defendant was convicted of first degree assault and the use of a handgun in the commission of a crime of violence,[12] and was sentenced to twenty years for the assault conviction and twenty years consecutive for the use of a handgun in the commission of a crime of violence. The defendant argued that under Md.Code (1974, 1998 Repl.Vol.), § 12–702(b) of the Courts & Judicial Proceedings Article, he could not on retrial receive a sentence for first degree assault greater than the sentence previously imposed (ten years) in the prior trial for the attempted voluntary manslaughter

---

12. At the close of evidence, the State was permitted to enter the charge of attempted voluntary manslaughter nolle prosequi over defense counsel's objections. We determined that this action could not serve to increase the defendant's sentence by circumventing the prohibition of § 12–702(b) of the Courts and Judicial Proceedings Article.

conviction. We agreed that defendant's argument was correct if, in the prior trial, defendant's convictions for first degree assault and attempted voluntary manslaughter merged. *Id.* at 228, 772 A.2d at 294.

■ Under federal double jeopardy principles and Maryland merger law, "the principal test for determining the identity of offenses is the required evidence test." *Id.* at 236–37, 772 A.2d at 299 (footnote omitted). The required evidence test prohibits separate sentences for each offense if only one offense requires proof of a fact which the other does not. *Id.* In Maryland, we noted, a person may be convicted of attempted voluntary manslaughter at common law when:

"an individual, engaged in an altercation, suddenly attempts to perpetrate a homicide caused by heat of passion in response to legally adequate provocation, and where the attempt results in something less than the actual wrongful killing...."

*Id.* at 238, 772 A.2d at 300. Therefore, we concluded, "attempted voluntary manslaughter requires an attempted homicide in the heat of passion in response to a legally adequate provocation." *Id.* at 238, 772 A.2d at 300. Having observed that first degree assault may be committed either by causing or attempting to cause "serious physical injury" or by use of a firearm, we turned to the merger question. We said as follows:

"Attempted voluntary manslaughter clearly has a different required mens rea—an intent to kill—than first degree assault, which requires the specific intent to cause, or attempt to cause, serious physical injury. Upon examination of the first modality, (a)(1), of the first degree assault statute, however, it is clear that (a)(1) is subsumed by attempted voluntary manslaughter. Attempted voluntary manslaughter requires a specific intent to commit a homicide, which embodies an intention to cause or attempt to cause serious physical injury as required by (a)(1)."

*Id.* at 239, 772 A.2d at 301. We therefore determined that, as pertains to merger, first degree assault, when committed

under the modality of intentionally causing or attempting to cause serious physical injury to another, is a lesser included offense of attempted voluntary manslaughter. *Id.* at 241, 772 A.2d at 302. On the other hand, we pointed out, first degree assault, when committed under the modality of committing an assault with a firearm, is not a lesser included offense of attempted voluntary manslaughter. *Id.*

In *Roary v. State*, 385 Md. 217, 867 A.2d 1095 (2005), we held that an assault in the first degree, when committed or attempted in a manner that caused a significant threat to life or limb and resulted in the death of another, could support a common law second degree felony murder conviction. *Id.* at 236, 867 A.2d at 1106. The defendant in *Roary* was acquitted of "intent to kill" second degree murder and transporting a handgun on his person, but was convicted of second degree felony-murder in the course of a first degree assault, involuntary manslaughter, first and second degree assault, and other charges. *Id.* at 224, 867 A.2d at 1099. This Court held that "first degree assault is a proper underlying felony to support a second degree felony-murder conviction." *Id.* at 222, 867 A.2d at 1098.

## IV.

Traditionally, the mitigation defenses invoked by petitioners in this case have applied only to cases of criminal homicide and its shadow forms, such as attempted murder. *See Richmond v. State*, 330 Md. 223, 623 A.2d 630 (1993).

■■■ The first defense, commonly referred to as hot-blooded response to legally adequate provocation, typically involves passion-creating circumstances, those that provoke action, and therefore, those to which the rule of provocation applies. *Girouard v. State*, 321 Md. 532, 538, 583 A.2d 718, 721 (1991). *See also State v. Faulkner*, 301 Md. 482, 486, 483 A.2d 759, 761 (1984). In *Girouard*, we stated the test for determining when the defense of provocation may apply as follows:

"1. There must have been adequate provocation;

2. The killing must have been in the heat of passion;

3. It must have been a sudden heat of passion—that is, the killing must have followed the provocation before there had been a reasonable opportunity for the passion to cool;

4. There must have been a causal connection between the provocation, the passion, and the fatal act."

*Girouard,* 321 Md. at 539, 583 A.2d at 721. We have recognized that the defense may be raised in cases involving mutual affray,[13] assault and battery, discovering one's spouse in the act of sexual intercourse with another, resisting an illegal arrest, witnessing, or being aware of, an act causing injury to a relative or a third party, and anything the natural tendency of which is to produce passion in ordinary men and women. *Id.* at 538, 583 A.2d at 721. *See also Faulkner,* 301 Md. at 486, 483 A.2d at 761–62; *Glenn v. State,* 68 Md.App. 379, 403–04, 511 A.2d 1110, 1123, *cert. denied,* 307 Md. 599, 516 A.2d 569 (1986); 1 RONALD A. ANDERSON, WHARTON'S CRIMINAL LAW AND PROCEDURE § 276 (1957). Words alone, we have been clear, are insufficient provocation. *See, e.g., Girouard,* 321 Md. at 540, 583 A.2d at 722; *Sims v. State,* 319 Md. 540, 552, 573 A.2d 1317, 1322–23 (racial slurs and "[i]nsulting words or gestures, no matter how opprobrious, do not amount to an affray, and standing alone, do not constitute adequate provocation"); ROLLIN M. PERKINS, PERKINS ON CRIMINAL LAW 62 (2d ed.1969) (even comments characterized as fighting words are insufficient provocation).

 Imperfect self-defense is a defense to murder. *Faulkner,* 301 Md. at 500, 483 A.2d at 768. First recognized in *Faulkner,* we characterized "imperfect self-defense" as a

---

**13.** A mutual affray occurs "when persons enter into angry and unlawful combat with a mutual intent to fight...." *Sims v. State,* 319 Md. 540, 552, 573 A.2d 1317, 1322 (1990). The rule of provocation will apply in that situation when, "as a result of the effect of the combat, the passion of one of the participants is suddenly elevated to the point where he resorts to the use of deadly force to kill the other solely because of an impulsive response to the passion and without time to consider the consequences of his actions." *Id.* at 552, 573 A.2d at 1322.

"mitigation defense," and explained its effect in the murder context as follows:

> "Perfect self-defense[14] requires not only that the killer subjectively believed that his actions were necessary for his safety but, objectively, that a reasonable man would so consider them. Imperfect self-defense, however, requires no more than a subjective honest belief on the part of the killer that his actions were necessary for his safety, even though, on an objective appraisal by a reasonable man, they would not be found to be so. If established, the killer remains culpable and his actions are excused only to the extent that mitigation is invoked."

*Id.* at 500, 483 A.2d at 768–69 (quoting *Faulkner v. State,* 54 Md.App. 113, 115, 458 A.2d 81, 82) (footnote omitted). Commonly a mitigating defense to homicide, we explained the application of imperfect self-defense in terms of negating the malice element of murder:

> "Logically, a defendant who commits a homicide while honestly, though unreasonably, believing that he is threatened with death or serious bodily harm, does not act with malice. Absent malice he cannot be convicted of murder. Nevertheless, because the killing was committed without justification or excuse, the defendant is not entitled to full exoneration. Therefore, as we see it, when evidence is presented showing the defendant's subjective belief that the use of force was necessary to prevent imminent death or serious bodily

---

14. The elements of self-defense are well-settled in Maryland:
 "(1) The accused must have had reasonable grounds to believe himself in apparent imminent or immediate danger of death or serious bodily harm from his assailant or potential assailant;
 "(2) The accused must have in fact believed himself in this danger;
 "(3) The accused claiming the right of self-defense must not have been the aggressor or provoked the conflict; and
 "(4) The force used must not have been unreasonable and excessive, that is, the force must not have been more force than the exigency demanded."
 *State v. Faulkner,* 301 Md. 482, 485–86, 483 A.2d 759, 764 (1984).

harm, the defendant is entitled to a proper instruction on imperfect self-defense."

*Id.* at 500, 483 A.2d at 769 (footnote omitted).

Prior to the new assault provisions enacted in 1996, this Court allowed for the limited expansion of these mitigation defenses, which traditionally served to reduce murder to manslaughter, to allow for the defenses to be raised in cases of assault with intent to murder. *See Webb v. State,* 201 Md. 158, 93 A.2d 80 (1952); *State v. Faulkner,* 301 Md. 482, 483 A.2d 759 (1984); *Richmond v. State,* 330 Md. 223, 228, 623 A.2d 630, 632 (1993). The defense of hot-blooded response to adequate provocation was recognized by this Court logically to apply to assault with intent to murder in *Webb v. State,* 201 Md. 158, 93 A.2d 80 (1952). In *Webb,* the defendant, who had been convicted of assault with intent to kill and murder, argued on appeal that the evidence did not support that he acted with malice aforethought. Addressing the defendant's argument, this Court explained that while there is no *per se* intent to kill by the fact of the assault, even if factors such as the use of deadly weapon are present, the "essence" of the offense would be outcome-determinative. *Id.* at 161–162, 93 A.2d at 81–82 (internal quotations and citations omitted).

Where the essence of an assault is aligned with the essence of a murder, this Court has further recognized imperfect self-defense as a proper defense to the statutory crime of assault with intent to murder. We did so because we considered imperfect self-defense to be a shadow form of self-defense. *State v. Faulkner,* 301 Md. 482, 483 A.2d 759. *See also Cunningham v. State,* 58 Md.App. 249, 254, 473 A.2d 40, 43, *cert. denied,* 300 Md. 316, 477 A.2d 1195 (1984). We explained in *Faulkner* as follows:

"Faulkner seeks to apply the mitigation defense of imperfect self-defense to the statutory offense of assault with intent to murder under Md.Code (1957, 1982 Repl.Vol.), Art. 27, § 12. A proper analysis of this statute requires us to take heed of the principle of statutory construction that in determining the real legislative intent, we consider the

'language of an enactment in its natural and ordinary signification.' In view of this principle § 12 does no more than use the term 'murder.' The statute does not define the term or limit it in any manner. The 'natural and ordinary signification' of this term is that the General Assembly intended to incorporate the common law of murder into this particular statute. Indeed, we have repeatedly defined the offense of assault with intent to murder as an assault upon the victim coupled with an intent to murder, which can be shown that the crime would have been murder if the victim had died. Logically, because the statutory offense is defined in terms of murder, all the defenses available in a murder prosecution are applicable in an assault with intent to murder prosecution. There is, however, one difference in the effect that the defenses to the statutory crime have on the offense. For murder, mitigation defenses reduce the offense to manslaughter. By contrast, for assault with intent to murder, a mitigation defense reduces the crime to, at most, simple assault. The rationale behind this result is that Maryland does not recognize the offense of assault with intent to manslaughter."

*Faulkner*, 301 Md. at 503, 483 A.2d at 770–771 (footnote and citations omitted).

Subsequent attempts to extend the imperfect self-defense and provocation defenses to other aggravated assaults have been rejected by this Court. *See Richmond v. State*, 330 Md. 223, 623 A.2d 630 (1993); *Watkins v. State*, 328 Md. 95, 613 A.2d 379 (1992). In *Watkins,* we characterized the *Faulkner* holding as "a generous expansion of the law of self-defense...." *Watkins,* 328 Md. 95, 106 n. 3, 613 A.2d 379, 384 n. 3. We declined to extend *Faulkner* to the crimes of unlawful shooting with intent to disable, use of a handgun in the commission of a crime of violence and battery, noting that, "the defense of imperfect self-defense does not apply to and is not available to mitigate any of the crimes of which the defendant was convicted." *Id.* at 106, 613 A.2d at 384 (footnote omitted).

In *Richmond,* the defendant was convicted of malicious wounding with the intent to disable. Richmond challenged the trial court's refusal to instruct the jury on the issue of imperfect self-defense, arguing that the defense should mitigate his aggravated assault charge to "assault and battery." *Richmond,* 330 Md. at 227, 623 A.2d at 631. We rejected that argument and held that imperfect self-defense did not apply to malicious wounding with intent to disable, explaining that "imperfect self-defense as a mitigating factor . . . is limited to criminal homicide and its shadow forms, such as attempted murder." *Id.* at 233, 623 A.2d at 634–635 (quotation omitted). We also rejected the defendant's argument that "the principles of imperfect self-defense apply to every crime that requires proof of malice without regard to whether a criminal homicide is involved." *Id.* at 227, 623 A.2d at 632. In so doing, we accepted the State's arguments that " 'malice' as an element of the crime of murder differs from 'malice' with respect to other crimes, and imperfect self-defense negates only that species of malice applicable to murder [and that] the concept of mitigation has universally and historically been limited to offenses involving criminal homicide, or the 'shadow' or inchoate forms of those offenses." *Id.* at 227–28, 623 A.2d at 632 (footnote omitted).[15]

---

**15.** The difference between malice in the case of homicide and criminal cases not involving murder was explained by the Court as historical:

"This concept of mitigation, *i.e.,* the presence of circumstances sufficient to mitigate murder to manslaughter, developed in England at a time when murder was not divided into degrees and all murder was punishable by death. Recognizing that not all murders were equal in culpability, and that under some circumstances justice required that the perpetrator suffer a lesser stigma and sanction, the concept of mitigation was developed and the catchall of manslaughter was used as an appropriate repository for mitigated offenses."

*Richmond v. State,* 330 Md. 223, 231, 623 A.2d 630, 634 (1993).

We noted that "[t]he defendant is in error in assuming that absence of mitigation is always an element of malice. The absence of mitigation is an element of malice only when the offense is o ne to which mitigation may apply to reduce the offense, *i.e.,* offenses involving murder." *Id.* at 232, 623 A.2d at 634. Thus, because non-homicide offenses that included malice did not require a proof of absence of mitigating factors, imperfect self-defense did not apply. *Id.* at 233, 623

■ The 1996 legislative repeal of the prior assault provisions, and enactment of a new assault statute in Md.Code (1957, 1996 Repl. Vol.), Art. 27 §§ 12, 12A, and 12A–11, represented a substantive change in the law of assault in Maryland. *See Robinson v. State*, 353 Md. 683, 694, 728 A.2d 698, 703 (1999) ("[T]he statutes as adopted represent the entire subject matter of the law of assault and battery in Maryland, and as such, abrogate the common law on the subject .... [the statutes] created new offenses."). The new consolidated assault statute compels us to revisit whether mitigation defenses, formerly recognized for assault with intent to murder and attempted murder, should be applicable in cases of first degree assault. The question of whether mitigation defenses apply to the 1996 assault statute is a matter of first impression, in as much as the statute created a new offense and abrogated the common law offense of assault and battery. *Robinson*, 353 Md. at 694, 728 A.2d at 703.

---

A.2d at 634–635. In other words, showing or asserting a defense that offered mitigating factors had no impact on offenses whose intent elements could not be negated by the presence of mitigating factors. This Court further cautioned:

"The defense of absence of the requisite specific intent to commit a crime should not be confused with the principle of mitigation. A defendant may intend the exact result he brings about, but be entitled to mitigation because of the circumstances that caused him to act. O n the other hand, a defendant not entitled to mitigation may present as a defense evidence of an honestly held though objectively unreasonable belief that is inconsistent with the specific intent required to convict.

"Certainly, if the jury in the case before us found that the defendant held a subjectively honest, albeit unreasonable, belief inconsistent with the intent to disable, that would furnish a complete defense to this specific intent crime. That fact has nothing to do, however, with the mitigator of imperfect self-defense, which has no application here. The defendant's state of mind may be relevant and potentially decisive when it undercuts the essential element of specific intent that the State must prove beyond a reasonable doubt. No separate instruction is needed for this defense. Instructions dealing with the essential elements that must be proven by the State and the standard of proof applicable in a criminal case fully cover the point. An instruction on imperfect self-defense under these circumstances would not only be unnecessary, it would be inappropriate and confusing."

*Id.* at 234–235, 623 A.2d at 635.

The question in this case is resolved most appropriately by applying our rationale in prior cases where we decided whether mitigation defenses could apply. We implied that the defense of hot-blooded response to adequate provocation could serve as a mitigation defense for assault with intent to murder in *Webb v. State*, 201 Md. 158, 162, 93 A.2d 80, 82 (1952). We stated in *Webb* that "there was no evidence ... that the accused had any adequate provocation" in order to negate malice. *Id.* Similarly, we held that the mitigation defense of imperfect self-defense applied to assault with intent to murder in *State v. Faulkner*, 301 Md. 482, 483 A.2d 759 (1984). We said as follows:

> "Logically, because the statutory offense is defined in terms of murder, all defenses available in a murder prosecution are applicable in an assault with intent to murder prosecution .... a mitigation defense reduces the crime to, at most, simple assault. The rationale behind this is that Maryland does not recognize the offense of assault with intent to manslaughter."

*Id.* at 504, 483 A.2d at 771. Mitigation applied because imperfect self-defense served to negate malice. *Id.* at 500, 483 A.2d at 769.

When we declined to extend the mitigation defenses beyond assault with intent to murder in *Richmond v. State*, 330 Md. 223, 623 A.2d 630 (1993), our reasoning hinged also upon the requirement of malice. In *Richmond*, we said as follows:

> "Malice, as this Court has pointed out, is a chameleonic term, taking on different meanings according to the context in which it is used. In the context of murder cases, this Court has said that malice means the presence of the required malevolent state of mind coupled with the absence of legally adequate justification, excuse, or circumstances of mitigation. When correctly defined in criminal cases not involving murder, malice does not involve proof of the absence of mitigation. Simply put, mitigation that will reduce one offense to another is a concept peculiar to homicide cases."

*Id.* at 231, 623 A.2d at 634. Thus, we held that the doctrine of imperfect self-defense was limited to "criminal homicide and its shadow forms, such as attempted murder...." *Id.* at 233, 623 A.2d at 635 (citations omitted). We repeated this principle with approval more recently in *Jones v. State*, 357 Md. 408, 422, 745 A.2d 396, 404 (2000), a case decided obviously well after the passage of the 1996 assault statutes. In *Jones* we reasoned that "[i]f established, imperfect self-defense negates the element of malice in a charge of murder...." *Id.*

The landscape with respect to *Richmond's* limitation on mitigation defenses for assault changed significantly after our decision in *Roary v. State*, 385 Md. 217, 867 A.2d 1095 (2005). *Roary* held that first degree assault could serve as a predicate crime to support felony murder. When deciding the question in *Roary*, we noted that one frequent objection to allowing assault as a predicate for felony-murder was the idea that such a rule "would ... relieve the prosecution in the great majority of homicide cases of the burden of having to prove malice in order to obtain a murder conviction...." *Id.* at 233, 867 A.2d at 1104 (quoting *California v. Hansen*, 9 Cal.4th 300, 36 Cal.Rptr.2d 609, 885 P.2d 1022, 1028 (1994)). Nonetheless, the majority in *Roary* articulated the rule from *Fisher v. State*, 367 Md. 218, 786 A.2d 706 (2001), that "a criminal homicide committed in the perpetration of or in the attempted perpetration of a dangerous to life felony will supply the element of malice necessary to raise the homicide to the level of murder in this State." *Roary*, 385 Md. at 232, 867 A.2d at 1103. We concluded that assault, as a predicate for felony-murder, served the purpose of the felony-murder doctrine, "to deter dangerous conduct by punishing as murder a homicide resulting from dangerous conduct in the perpetration of a felony, even if the defendant did not intend to kill." *Id.* at 226–27, 867 A.2d at 1100 (quoting *Fisher*, 367 Md. at 262, 786 A.2d at 732). Thus we said as follows:

> "We do not hesitate to hold that first degree assault is dangerous to human life. The nature of the crime committed, a crime which 'creates a substantial risk of death,' is undoubtedly dangerous to human life .... first degree

assault is a proper underlying felony to support a second degree felony-murder conviction."

*Id.* at 230, 867 A.2d at 1102 (footnote omitted).

There was no defense of mitigating circumstances raised in *Roary,* such as imperfect self-defense or provocation. We noted a potential future issue to be decided by this Court, should a case present the mitigation issue. *Id.* at 235, 867 A.2d at 1105. We noted that a common reason given by courts against allowing assault to serve as a predicate for felony murder is "the concern that . . . then 'every felonious assault resulting in death would be murder, and any lesser offense such as voluntary manslaughter, involuntary manslaughter, and criminally negligent homicide would effectively be eliminated.' " *Id.* (citation omitted). We went on to say as follows:

"In response to this concern, Georgia has adopted a modi-fied version of the felony-murder doctrine. It precludes a felony-murder conviction only where it would prevent an otherwise warranted conviction of voluntary manslaughter. The court reasoned that 'the strict liability element of felony-murder, which allows the 'bootstrapping' of an as-sault charge to support a felony-murder conviction, is unfair in those instances where the killings otherwise could have been reduced, on the ground of mitigation, to manslaugh-ter." Whether Maryland should or needs to adopt a similar modification to the felony-murder rule, however, need not be decided today as the facts of the case do not remotely raise the issue of mitigation."

*Id.* (citations omitted). Although *Stevenson* and *Christian* do not implicate felony-murder issues because, fortunately, the victims survived in both cases, they do require us to examine the issue of mitigation in first degree assault cases in light of the felony-murder framework.

The application of the felony-murder rule relies on the imputation of malice from the underlying predicate felony. In *State v. Allen,* 387 Md. 389, 875 A.2d 724 (2005), we limited the felony-murder rule to situations where the intent to commit

the underlying felony existed prior to or concurrent with the act causing the death of the victim, and not afterwards. *Id.* at 402, 875 A.2d at 732. In so doing, we explained: "the felony-murder rule is a legal fiction in which the intent and the malice to commit the underlying felony is 'transferred' to elevate an unintentional killing to first degree murder. . . ." *Id.* at 401, 875 A.2d at 731 (citation omitted).

This rationale is in accord with the reasoning expressed by the Supreme Court of Georgia in *Edge v. State*, 261 Ga. 865, 414 S.E.2d 463 (1992). The court in *Edge* said:

> "[W]here the jury renders a verdict for voluntary manslaughter, it cannot also find felony murder based on the same underlying aggravated assault. This can be understood by recognizing the theory of felony murder; that is, that it depends on the transfer or imputation of malice from the *mens rea* of the felonious assault to the killing. If the jury finds voluntary manslaughter, it necessarily finds the felonious assault was mitigated by provocation, and committed without the *mens rea* essential to impute malice to the killing. Thus, the felony of assault in that instance cannot support a felony-murder conviction because there is no malice to be transferred."

*Id.* at 464–65 (citation and footnote omitted).

The felony-murder rule relies on the imputation of malice from the underlying crime, in this case, first degree assault, and therefore the result of *Roary* is that the statutory crime of first degree assault in § 3–202 could supply the malice necessary to charge a defendant with murder if the victim dies. That the intent to commit first degree assault may now serve to sustain a murder charge convinces us that statutory first degree assault should be considered, under certain circumstances, a shadow form of homicide in Maryland. The application of mitigation defenses is still limited to only "criminal homicide and its shadow forms" on the basis that only homicide and its shadow forms require the same proof of malice. But under *Roary*, the intent to commit first degree assault suffices to imply the malice required for a

murder conviction. Where such intent may be imputed to underlie a murder conviction, the limitations of *Richmond* are no longer viable, and mitigation defenses should be available for charges of first degree assault.

 Accordingly, we hold that the mitigation defenses of hot-blooded response to adequate provocation and imperfect self-defense could apply to mitigate first degree assault where those assaults could now supply the malice necessary for felony-murder if the victim dies.

*JUDGMENTS IN CHRISTIAN V. STATE AND STEVENSON V. STATE REVERSED. CASES REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO REMAND THE CASES TO THE CIRCUIT COURT FOR BALTIMORE COUNTY AND THE CIRCUIT COURT FOR WICOMICO COUNTY RESPECTIVELY FOR NEW TRIAL. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY BALTIMORE AND WICOMICO COUNTIES.*

BELL, C.J., concurs.

BELL, C.J., concurring.

I join in the judgment of the court that the mitigation defense of hot-blooded response to adequate provocation as well as the common law doctrine of imperfect self-defense can apply to the crime of first degree assault. I disagree, however, with the majority's rationale for so concluding, that, in light of *Roary v. State*, 385 Md. 217, 867 A.2d 1095 (2005) and under the felony-murder framework, first degree assault may be deemed a shadow form of homicide. I believe that, given the ambiguity in the statutory assault framework itself, the rule of lenity applies.

We expanded the applicability of imperfect self-defense to common law assault with intent to murder in *State v. Faulkner*, 301 Md. 482, 506, 483 A.2d 759, 772 (1984), and, in *Richmond v. State*, 330 Md. 223, 233 623 A.2d 630, 634–35 (1993), affirmatively limited the applicability of mitigation

defenses to shadow forms of homicide, *e.g.*, attempted murder, on the basis that only a very narrow class of malice triggers such defenses. This Court has never addressed the imputation of malice of the murderous species to first degree assault. The statutory assault scheme is ambiguous as to the character of intent present in first degree assault, and it is this ambiguity which, applying the rule of lenity, requires that mitigation defenses be permitted in cases of first degree assault.

*Christian v. State* and *Stevenson v. State,* the cases that are consolidated in this opinion, require that we determine whether certain defenses, heretofore applied, except for homicide offenses, only to assault with intent to murder charges, *see Richmond v. State,* 330 Md. 223, 228, 623 A.2d 630, 632 (1993), now apply to Maryland Code (2000, 2006 Supp.) § 3–202 of the Criminal Law Article, which proscribes the recently promulgated statutory offense of first degree assault.[1] Daniel Christian, one of the petitioners, contends that his first degree assault conviction should be mitigated to a second degree assault conviction, as a result of his defense of imperfect self-defense. The other petitioner, Kalilah Romika Stevenson, similarly argues that she should have been convicted only of second degree assault, but on the basis of her defense of hot-blooded response to adequate provocation.

The majority correctly recounts the facts of these cases, and explains the history of the crime of assault, related statutory history and the general perimeters of mitigation defenses

---

**1.** Maryland Code (1957, 1996 Repl.Vol.) Art. 27 § 12A, now codified as amended at Md.Code (2002, 2006 Cum.Supp.), § 3–262 of the Criminal Law Article, provides, as pertinent:

"(a)(1) A person may not intentionally cause or attempt to cause serious physical injury to another.

"(2) A person may not commit an assault with a firearm, including:

"(i) a handgun, antique firearm, rifle, shotgun, short-barreled shotgun, or short-barreled rifle, as those terms are defined in § 4–201 of this article;

"(ii) an assault pistol, as defined in § 4–301 of this article;

"(iii) a machine gun, as defined in § 4–401 of this article; and

"(iv) a regulated firearm, as defined in § 5–101 of the Public Safety Article."

under Maryland law. *Christian v. State* and *Stevenson v. State*, 405 Md. 310–17, 322–30, 951 A.2d 834–38, 841–46 (2008).

In 1996, by Chapter 632 of the Laws of Maryland 1996, effective October 1, 1996, the General Assembly changed the legal landscape with regard to the law of assault and battery, both statutory and common law. The effects of these changes were considered by the Court in *Robinson v. State*, 353 Md. 683, 728 A.2d 698 (1999). There, the question presented was "whether 'common law assault and battery was a cognizable crime in Maryland after October 1, 1996,' the effective date of statutory assault, 1996 Laws of Maryland, Ch. 632." *Id.* at 687, 728 A.2d at 699. We held that they were not, "by this statutory enactment the General Assembly [having] repealed the common law crimes of assault and battery." *Id.* In reaching that conclusion, we acknowledged that statutes are not presumed to repeal the common law, *id.* at 693, 728 A.2d at 702, "that a statute, made in the affirmative without any negative expressed or implied, does not take away the common law," *id.*, *quoting Lutz v. State*, 167 Md. 12, 15, 172 A. 354, 356 (1934) (*quoting* 25 R.C.L. 1054), but that it is otherwise where there is a conflict between a statute and the common law or where the statute deals with an entire subject-matter. *Id.* at 693, 728 A.2d at 702–03, *quoting Lutz*, 172 A. at 356 (*citing* Sutherland on Stat. Const. §§ 294; 12 C.J. 186); *Watkins v. State*, 42 Md.App. 349, 353–54, 400 A.2d 464, 467 (1979) and *citing Irvine v. Rare Feline Breeding Center, Inc.*, 685 N.E.2d 120, 123 (Ind.Ct.App.1997), *transfer denied*, 698 N.E.2d 1183 (Ind.1998). Although the 1996 statute contained no specific word of repeal or abrogation of the common law or any indication of a conflict,

We ... determined ... that the statutes as adopted represent the entire subject matter of the law of assault and battery in Maryland, and as such, abrogate the common law on the subject. The 1996 statutes are more than mere penalty provisions for the common law offenses of assault and battery. They created degrees of assault unknown to the common law, and while retaining the common law elements of the offenses of assault and battery and their

judicially determined meanings, the statutes repealed the statutory aggravated assaults and created new offenses.

"Perhaps ironically, some of the best evidence that the 1996 assault statutes comprise more than just penalty provisions for the common law offenses of assault and battery, and that they actually abrogated those common law offenses, derives from the fact that the statutes explicitly repealed and replaced the entire *statutory* scheme for aggravated assaults then existent, *i.e.*, Assault with Intent to Murder, Ravish or Rob, Assault–Third Person Aiding One Being Assaulted, and Assault by Inmates, as well as the crime of Maiming. *See* 1996 Laws of Maryland, Ch. 632, § 1, at 3616–17 and 3629; Maryland Code (1957,1992 Repl.Vol., 1995 Supp.) Article 27, §§ 11E, 12, 12A, and 384–86. The new statutes thus subsumed all previous statutory assault provisions as well as the common law into a single scheme and established a two-tiered regimen."

*Robinson*, 353 Md. at 694, 728 A.2d at 703.

The dissenting opinion in that case, *Robinson*, 353 Md. at 706–08, 728 A.2d at 708–10 (Chasanow, J., dissenting), construed the 1996 assault statute as simply establishing statutorily the penalty for the different forms of common law assault and battery. Rejecting that rationale, the Court chided:

"This interpretation ignores the critical fact that the new statutory scheme now incorporates within it all possible previous assault crimes-common law as well as statutory forms. Prior to October 1, 1996, if a person committed a criminal assault, that crime might have fallen under one of the aggravated assault provisions alluded to above. But not all criminal assaults committed prior to October 1, 1996 fit within the statutory scheme existing at the time. Those assaults that fell outside the statutory provisions could be prosecuted under the common law. The dichotomy between assaults that could fit within the statutory provisions, and those that could not, ended, however, on October 1, 1996. Whether an assault committed prior to the new statutes' effect fit within the former statutory scheme for aggravated

assaults, or fell under the common law for simpler offenses, the same assault committed after September 30, 1996 cannot help but fit within one of the new statutory provisions. *Any and all assaults,* no matter how simple or aggravated, now fit within § 12A, second degree assault, or § 12A–1, first degree assault."

*Id.* at 694–695, 728 A.2d at 703.

As the majority states, "[b]y its terms, viewed in the context of the applicable definition of 'serious physical injury,' the first degree assault statute now covers the most serious assaults, including those former aggravated assaults, whose commission ordinarily, although certainly not always, involved the commission of a battery, *e.g.* assaults with intent to murder, maim and disfigure. Second degree assault, on the other hand, encompasses all other assaults, and batteries, including those former aggravated assaults that ordinarily did not involve completed batteries, *e.g.* assault with intent to rob, provided that no firearm was used." *Christian v. State* and *Stevenson v. State,* 405 Md. at 320, 951 A.2d at 840.

The meaning of first degree assault, its elements and requirements, and its relationship to attempted voluntary manslaughter were considered by this Court in *Dixon v. State,* 364 Md. 209, 772 A.2d 283 (2001). In that case, the question presented was:

"Was Petitioner illegally sentenced to twenty years for first degree assault where in a prior trial he was convicted of attempted voluntary manslaughter and first degree assault and sentenced to concurrent terms of ten and twenty years, respectively, and the Court of Special Appeals, upon reversing the convictions, concluded for the trial court's guidance on remand that first degree assault should have merged into attempted voluntary manslaughter, and on retrial the State was allowed, over objection, to nol pros the attempted voluntary manslaughter charge?"

*Id.* at 213, 772 A.2d at 285. We answered that question in the affirmative, but only after having considered the nature of the two crimes and conducted a merger analysis.

In Maryland, we noted, a person may be convicted of attempted voluntary manslaughter at common law when:

"an individual, engaged in an altercation, suddenly attempts to perpetrate a homicide caused by heat of passion in response to legally adequate provocation, and where the attempt results in something less than the actual wrongful killing. . . ."

364 Md. at 238, 772 A.2d at 300, *quoting Cox v. State,* 311 Md. 326, 334, 534 A.2d 1333, 1337 (1988). Therefore, we determined, "attempted voluntary manslaughter requires an attempted homicide in the heat of passion in response to a legally adequate provocation." 364 Md. at 238, 772 A.2d at 300. Having observed that first degree assault may be committed either by causing or attempting to cause "serious physical injury" or by use of a firearm, *id.* at 239, 772 A.2d at 300, we turned to the merger question. Acknowledging that, under federal double jeopardy principles and Maryland merger law, "the principal test for determining the identity of offenses is the required evidence test," 364 Md. at 236–37, 772 A.2d at 299, (*citing Nightingale v. State,* 312 Md. 699, 703, 542 A.2d 373, 374 (1988)) *(quoting Newton v. State,* 280 Md. 260, 268, 373 A.2d 262, 266(1977)), see also *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), pursuant to which offenses are the same and merge, thus prohibiting separate sentences for each offense, only if one offense requires proof of a fact which the other does not, *id.* at 236–237, 772 A.2d at 299, we opined:

"Attempted voluntary manslaughter clearly has a different required mens rea-an intent to kill-than first degree assault, which requires the specific intent to cause, or attempt to cause, serious physical injury. Upon examination of the first modality, (a)(1), of the first degree assault statute, however, it is clear that (a)(1) is *subsumed* by attempted voluntary manslaughter. Attempted voluntary manslaughter requires a specific intent to commit a homicide, which embodies an intention to cause or attempt to cause serious physical injury as required by (a)(1)."

364 Md. at 239, 772 A.2d at 300–01. Further explaining the analysis, the Court said:

"The intent to kill envelops the intent to do serious physical injury." Therefore, there is nothing required by modality (a)(1) of the first degree assault statute that is not also required by attempted voluntary manslaughter; the evidence required to show an attempt to kill would demonstrate causing, or attempting to cause, a serious physical injury. *Cf. Newton [v. State],* 280 Md. [260,] 269, 373 A.2d [262,] 267 [ (1977) ] (determining that felony murder and the underlying felony merged because "[t]he evidence required to secure a first degree murder conviction is, absent the proof of death, the same evidence required to establish the underlying felony"); *Thomas [v. State],* 277 Md. [257,] 270, 353 A.2d [240,] 248 [ (1976) ] (concluding that "[u]nder the *Blockburger* required evidence test, the same evidence necessary to convict on ... [a Maryland Code (1957, 1970 Repl. Vol, 1975 Cum.Supp.), Art. 66½, § 4–102, driving a motor vehicle without the consent of the owner and with the intent temporarily to deprive the owner of possession,] offense would always be sufficient to establish a [Maryland Code (1957, 1976 Repl.Vol.), Art. 27, § 349, taking of a motor vehicle without the consent of the owner and without the intent to appropriate or convert the vehicle,] offense")."

364 Md. at 239–40, 772 A.2d at 301, *quoting Bruce v. State,* 317 Md. 642, 647–48, 566 A.2d 103, 105 (1989), in turn *quoting* LeFave & Scott, *Criminal Law,* § 6.2, at 500 (2nd ed.1986).

As the majority states, "[w]e therefore determined, as pertains to merger, that first degree assault, when committed under the modality of intentionally causing or attempting to cause serious physical injury to another, is a lesser included offense of attempted voluntary manslaughter. 364 Md. at 241, 772 A.2d at 302. On the other hand, we pointed out, first degree assault, when committed under the modality of committing an assault with a firearm, is not a lesser included offense of attempted voluntary manslaughter. Id." *Christian v. State* and *Stevenson v. State,* 405 Md. at 321–22, 951 A.2d at 841.

Under *Dixon,* first degree assault with the intent to cause, or attempt to cause, serious bodily injury, became a lesser included offense of homicide, for the purpose of merger. First degree assault, under this interpretation, appeared akin to the previous assault with intent to murder addressed in *Faulkner.* The relationship between first degree assault and the pre–1996 re-codification assaults, in particular, assault with intent to murder, apart from merger, however, remained unexamined.

Also under *Dixon,* this Court characterized the rule of lenity as a guiding principle of statutory construction, and as an "aid in ascertaining legislative intent with respect to a statutory offense," which should be used to facilitate penal fairness. 364 Md. at 250, 772 A.2d at 307 (citations omitted). The rule of lenity provides that if a criminal statute contains language that creates ambiguity with respect to penalties, then such language *must* be interpreted in favor of the defendant. *See e.g., State v. Kennedy,* 320 Md. 749, 754, 580 A.2d 193, 195 (1990) (citations omitted). The rule of lenity is frequently applied to resolve ambiguity as to whether the legislature intended that there be multiple punishments for the same act or transaction. *E.g., Marquardt v. State,* 164 Md.App. 95, 149, 882 A.2d 900, 932 (2005) (citations omitted). As a result, the rule of lenity tends to arise as an alternate basis of merger in cases where the required evidence test, discussed *supra,* is not satisfied. The rule of lenity has also been applied to resolve ambiguity as to whether the legislature intended for a more severe penalty to apply in certain cases. *See e.g., Haskins v. State,* 171 Md.App. 182, 193–94, 908 A.2d 750, 756–57 (2006) (citations omitted). This Court has explained that the policy underlying lenity means, "the Court will not interpret a . . . criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what the legislature intended." *White,* 318 Md. 740, 744, 569 A.2d 1271, 1273 (citing *Simpson v. U.S.,* 435 U.S. 6, 15, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978)) (quoting *Ladner v. U.S.,* 358 U.S. 169, 178, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958)).

A.

Owing to our decision in *Robinson*, specifically, our determination that all previous assaults have been subsumed either in first or second degree assault, it is clear that, substantively, aggravated assaults that were recognized prior to the 1996 recodification of assaults assumed a place within the revised statute. *See Robinson* 353 Md. at 694, 728 A.2d at 703. There exists, nonetheless, ambiguity as to where the former classifications of assault, and, in particular, assault with intent to murder, fall within the revised statutory assault scheme.

The State argues that assault with intent to murder was, by virtue of the 1996 re-codification, placed completely outside of the purview of the revised assault statute, and within the purview of the revised attempted murder statute. For that proposition, it relies upon part of the Committee Note to Revise Article 27, which states that "the assault revision repealed the Article 27, § 12 crimes of assault with intent to murder, rape, rob or commit sexual offense, and codified the offense of attempted murder, rape, robbery and sexual offense." Maryland Code (1974, 1995 Repl.Vol., 1997 Supp.) §§ 9–106 of the Courts and Judicial Proceedings Article; 1996 Laws of Maryland, Ch. 632. I do not agree.

This Court is cognizant that Ch. 632, §§ 2 of the 1996 Laws of Maryland clearly states, "the Committee Notes and catch-lines contained in this Act *are not law*," 1996 Laws of Maryland, Ch. 632, §§ 2, at 3633 (emphasis added), and, therefore, we are not bound by, nor need be, persuaded by them. Lack of clarity with respect to the general consequences of any statute is resolved not only in light of legislative history, but also in light of case law and statutory purpose. *E.g., Mayor and Town Council of Oakland v. Town Council of Mountain Lake Park*, 392 Md. 301, 896 A.2d 1036, 1045 (2006). In Robinson, we opined that the Legislature re-codified assault in 1996 for the purpose of eliminating the dichotomy between common law assault and battery crimes, and statutory assaults; we did not, however, presuppose legislative intent to

eliminate, in substance, prior statutory assaults. See 353 Md. at 694–695, 728 A.2d at 703.

Assault and battery retain their "judicially determined meanings" under the 1996 re-codification. Md.Code (2000, 2006 Supp.) § 3–201, Crim. Law Art. First and second degree assault, therefore, provides the perimeters of assault, but does not circumscribe the elements of common law assault and battery. The scope of the relevant common law, which the Legislature intended to be incorporated into the new assault scheme, is informed by the nature of the prior statutes that proscribed aggravated assaults. The prior statutes, unlike the current statute, did not prescribe any of the elements of aggravated assaults *e.g.*, assault with intent to murder; rather, all of the elements of those assaults were the product of case law. See Art. 27, § 12; *see e.g., Franklin v. State*, 319 Md. 116, 125–26, 571 A.2d 1208, 1212 (1990). As a result, the substance of former aggravated assaults, as expressed in case law, is a part of the judicially determined meanings of assault.

The State also relies upon our decision in *Williams v. State*, 323 Md. 312, 593 A.2d 671 (1991). That reliance is to no avail. In *Williams*, we opined that the offense of assault with intent to murder and attempted second degree murder are the same offense *for the purpose of merger. Id.*, at 319, 593 A.2d at 673. The doctrine of merger, however, is an evidentiary doctrine, which does not determine how the Legislature intended to classify offenses. In addition, although the doctrine of merger may inform the nature of offenses, this Court has recognized that the Legislature may reject, and, thus, override, the doctrine and the assumptions underlying it. *Frazier v. State*, 318 Md. 597, 614–615, 569 A.2d 684, 693 (1990) (holding that the Legislature may impose punishment for conduct with aggravated circumstances under separate statutory offenses, even where offenses might otherwise be deemed the same under the required evidence test). Moreover, our decision in *Williams* preceded the 1996 re-codification of assault, which, under *Robinson*, places all aggravated assaults squarely within the purview of the revised assault statute. 353 Md. at 694, 728 A.2d at 703.

I find that ambiguity related to statutory classifications of offenses can trigger the rule of lenity if such ambiguity affects the availability of certain defenses, which, in turn, affects penalties. To interpret an ambiguity in a criminal statute in a manner that eliminates a mitigating defense, and thereby subjects the defendant to a greater penalty, necessarily increases the penalty to which the defendant may be subject. Thus, the rule of lenity applies to make available defenses that would have been available, consistent with legislative intent, absent statutory ambiguity.

The petitioner correctly notes that, "[i]f a person acting under a misguided belief could have been completely exonerated under the former statute because that person did not possess the intent required for the crime, it would seem that this misguided belief should at least mitigate [first degree assault] to second degree assault." As stated in the dissenting opinion in *Richmond*:

> As we have seen, to act maliciously, one must act with intent to cause the harm charged and without justification or excuse.... One who acts in the belief, sincerely and honestly held, that he or she is in imminent peril of death or grievous bodily injury acts in the belief that his or her actions are justified or excused, hence, without malice. A finding, to that effect, by the trier of fact precludes the defendant's conviction of a crime requiring proof of malice. It does not, however, prevent the trier of fact from further concluding that the defendant's belief was unreasonable and, thus, not justified. In the latter event, the defendant could be convicted of any charged offense, whether or not lesser included, or any lesser included offense, whether or not charged, ... which does not require proof of malice. While in the case of a murder indictment, the State's failure to prove malice may result in conviction of manslaughter, in the case of an aggravated assault requiring proof of malice, as in the present case, *a failure of proof may result in conviction of simple assault.*

330 Md. at 253–254, 623 A.2d at 645 (Bell, J., dissenting) (citations and footnotes omitted) (emphasis added).

The statutory language of the 1996 re-codification is ambiguous with respect to whether and, if so, where and how, it subsumes assault with intent to murder within the present two-tiered assault scheme. To be sure, under the current formulation of the assault scheme, first degree assault prohibits the commission of an assault with the specific intent "to cause serious physical injury" to another; however, it does not, in terms or by necessary implication, clearly characterize that proscribed intent as "the intent to murder." Under the prior regime, to be convicted of assault with intent to murder, the defendant must have committed the charged assault with the specific intent to murder, while, concurrently possessing malice of the murderous species. If these elements were met, were proven, the defendant could raise and, if appropriate— the issue had been generated, *see Shuck v. State*, 29 Md.App. 33, 349 A.2d 378 (1975), *cert. denied*, 278 Md. 735 (1976)—, the jury would be instructed with respect to the mitigation defenses, of imperfect self-defense and hot blooded response to adequate provocation. *See Faulkner*, 301 Md. at 483, 483 A.2d at 769; *see also Webb v. State*, 201 Md. 158, 161–62, 93 A.2d 80, 81–82 (1952).

The intent required by the first degree assault statute and the intent required by the former aggravated assault of assault with intent to murder, while not identical and, in many particulars, different, are specific ones, "to cause serious physical injury" and "to murder." Nevertheless, the required intent for first degree assault is not necessarily inconsistent with, and certainly does not exclude or negate, the required intent for assault with intent to murder, the possession of an intent to murder. It is true, of course, that proof of first degree assault does not require proof of an intent to murder, only that the physical injury on which the charge is based "[c]reates a substantial risk of death." Md.Code (2000, 2006 Supp.) § 3–201(d)(1), § 3–202(a)(1) of the Criminal Law Article. But that this is so is neither surprising, nor particularly telling. It is the intent with which the assault is committed that is dispositive, not the degree of risk the conduct creates that a particular consequence will occur. The effect of the

criminal conduct, the degree of risk that it involves, informs the decision with regard to intent—in the case of first degree assault, when the injury caused makes the risk of death substantial, the intent to cause "serious physical injury" may be inferred—; it does not define the intent. Whether the intent to cause serious physical injury is the equivalent of, or may encompass, the intent to murder is a matter that must be considered case by case, on the facts, circumstances and permissible inferences of the particular case. Pertinent to this point, in *Webb*, 201 Md. at 161–62, 93 A.2d at 82, quoting, with approval, Wharton, Criminal Law (12th Ed.) Section 841, we said:

> " 'On an indictment for an assault with intent to murder, the intent is the essence of the offense. Unless the offense would have been murder, either in the first or second degree, had death ensued from the stroke, the defendant must be acquitted of this particular charge.... It is not necessary, however, to sustain such an indictment that a specific intent to take life should be shown. If the intent were to commit grievous bodily harm, and death occurred in consequence of the attack, then the case would have been murder in the second degree; and, in case of death not ensuing, then the case would be an assault with intent to commit murder in the second degree. And if the intent were to kill in hot blood, or to kill one erroneously believed to be an aggressor, then the defendant may be convicted of an assault with intent to commit manslaughter.' In Wharton, Criminal Evidence (11th Ed.) Section 79, it is said: 'If intent is an element, the State must introduce evidence to show it. However, since intention is a fact which cannot be positively known to other persons, no one can testify directly concerning it and the matter must be an inference which the jury must find from established facts.' "

The State argues that the Legislature's use of the word, "risk," indicates that it was its intention to exclude the "intent to murder" from the intent to cause serious physical injury. This Court has stated that, "in interpreting a statute, we should employ a rule of construction that avoids a result

inconsistent with common sense." *Kennedy,* 320 Md. at 750, 580 A.2d at 194. (citations omitted). It simply does not comport with common sense that the General Assembly would create a statutory scheme requiring such "nice" parsing, making the proof of the requisite intent depend upon the defendant's having the intent to seriously injure, but not to murder. It is doubtful, in this context, that the State would be able to carry the burden of showing the defendant's intent to brutalize the victim only to the point of *near certain* death, but not death itself. The intent to cause serious physical injury cannot be said to exclude the intent to murder, to cause death.

Moreover, a defendant could, consistent with the first degree assault statute, commit an assault with a firearm, while possessing an intent to murder, as required by the former assault with intent to murder. Md.Code (2000, 2006 Supp.) § 3–201(a)(2), Crim. Law Art. That certainly would qualify as first degree assault, by the express terms of the statute. Indeed, this is quite a likely and predictable scenario.

The effect of the ambiguity as to where, within the first degree assault statute, assault with intent to murder falls is that, consistent with the rule of lenity, first degree assault is subject to the mitigation defenses of imperfect self-defense and hot-blooded response to adequate provocation, although only to the same extent that conduct that would have been punishable under the prior assault with intent to murder statute now is punishable as a first degree assault. Otherwise, the defendant who satisfies the elements of assault with intent to murder, and, so, would have been charged under the prior assault scheme is not only unable, as the petitioner points out, to defend himself or herself with all judicially recognized defenses, as provided by § 3–209,[2] but he or she faces a harsher penalty. *See* Md.Code (2000, 2006 Supp.) § 3–202(b), § 3–203(b), § 3–209, Crim. Law Art. Without being able to interpose the mitigation defenses, the defendant would

---

**2.** § 3–209. *Defenses*

A person charged with a crime under § 3–202, § 3–203, § 3–204, or § 3–205 of this subtitle may assert any judicially recognized defense.

face a sentence of twenty five years imprisonment, the maximum penalty for first degree assault, rather than the ten year maximum for second degree assault.

Imperfect self-defense, as we have seen, does not exonerate the defendant; therefore, allowing imperfect self-defense to be asserted in first degree assault cases would not, as suggested by the State in *Faulkner*, "reward unreasonableness." 301 Md. at 503, 483 A.2d at 770. As the petitioner appropriately points out, the dissent in *Richmond*, "recognizes that while it may not be appropriate to completely exonerate a defendant who commits an aggravated assault in the honest but unreasonable belief of the need for self defense, . . . if mitigation to a lesser offense is available, the punishment is more likely to fit the crime." Similarly, while it is not appropriate to exonerate a defendant who commits an aggravated assault, if the defendant acts in hot-blooded response to adequate provocation then mitigation to a lesser offense again makes it more likely that the punishment will fit the crime.

Insofar as the first degree assault statute subsumes assault with intent to murder, first degree assault stands in the place of assault with intent to murder as an exception to the rule, stated in *Richmond*, that mitigation defenses apply only to murder and its shadow form offenses. *See* 330 Md. at 233, 623 A.2d. at 634–35. It for this reason that one charged with first degree assault can employ all available defenses typically available to defend or mitigate against a charge of assault with intent to murder.